ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. WILLIAM E. LAWLER.

FILED MAY 2, 1894. No 5470.

1. **Trial:** SPECIAL FINDINGS: DISCRETION OF COURT. It is discretionary with the trial judge to submit or not submit special findings to the jury, and where it appears that there has been no abuse of such discretion in refusing to require a jury to make special findings, *held*, that such refusal was not erroneous.

2. **Carriers of Goods:** DESTRUCTION OF PROPERTY: MEASURE OF DAMAGES. Where property delivered to a common carrier for shipment is destroyed while in transit, the measure of the shipper's damages is the market value of the property at its place of destination at the time it should have been delivered there.

3. ———: ———: EVIDENCE: REVIEW. The action of the trial court in excluding certain testimony, examined, and *held* to be correct and not error.

4. **Witnesses:** MEMORANDA. A memorandum which it appears was prepared at the time of the fact in question or soon afterwards, which the witness knew to be correct at the time it was made, may be used by the witness to refresh his memory.

5. **Expert Testimony:** OPINION EVIDENCE. Evidence in the nature of expert or opinion testimony is not competent, and cannot be received upon a subject of inquiry which is of such a character as to be within the knowledge of men of common education and experience and require no special skill, knowledge, or experience in considering or forming an opinion upon it, as the jury will be presumed, if all the facts are before them, to be competent to draw the inference and form the opinion from such facts.

6. **Carriers of Goods:** VALIDITY OF CONTRACTS TO LIMIT LIA-
BILITY. A contract between a shipper and a common carrier,
which, by its terms, limits the liability of the carrier and re-
lieves it from either entirely or partially responding in damages
for injury or loss to property shipped under such contract, result-
ing from negligence of the carrier, is invalid or void under the
common law rule, as against public policy.

7. **Instructions.** It is not error for a court to refuse to give an in-
struction to a jury when the points covered by the instruction
requested to be given have been fully and fairly submitted to the
jury by other instructions.

ERROR from the district court of Nuckolls county. Tried
below before HASTINGS, J.

The opinion contains a statement of the case.

*George R. Peck, F. A. Brogan, A. A. Hurd,* and *G. W.
Hurd,* for plaintiff in error:

It was an abuse of discretion for the court to refuse to
submit questions for special findings. (*Floaten v. Ferrell,*
24 Neb., 352; *Nebraska & Iowa Ins. Co. v. Christiensen,* 29
Neb., 581; *Doom v. Walker,* 15 Neb., 347.)

The court erred in refusing to admit in evidence the
contract releasing the company from liability for damage
arising from fire. Congress has the exclusive right to reg-
ulate commerce between the states, and the states are pow-
erless so to do. (*State v. Pratt,* 59 Vt., 590; *People v. Brooks,*
4 Den. [N. Y.], 469; *Sweatt v. Boston, H. & E. R. Co.,* 3
Clif. [U. S. C. C.], 348; *Norfolk & W. R. Co. v. Common-
wealth,* 3 S. E. Rep. [Va.], 340; 2 Story, Const. [3d ed.],
p. 4; *State v. Delaware, L. & W. R. Co.,* 30 N. J. Law, 473;
*Lafarier v. Grand Trunk R. Co.,* 24 Atl. Rep. [Me.], 848;
*Moor v. Veazie,* 31 Me., 360; *State Tonnage Tax Cases,* 12
Wall. [U. S.], 214; *Hall v. De Cuir,* 95 U. S., 491; Pom-
eroy, Const. Law, sec. 378; *Wabash, St. L. & P. R. Co.
v. Illinois,* 118 U. S., 558; *State Freight Tax,* 82 U. S.,
232; *Hannibal & St. J. R. Co. v. Husen,* 95 U. S., 465;

*Western Union Telegraph Co. v. Texas*, 105 U. S., 460; *Louisville & N. R. Co. v. Railroad Commission of Tennessee*, 16 Am. & Eng. R. Cases [Tenn.], 3.)

*John M. Ragan, contra*, cited,

On the question of the power of the carrier to limit its liability: Constitution, sec. 4, art. 11; *Atchison & N. R. Co. v. Washburn*, 5 Neb., 117; *Missouri P. R. Co. v. Vandeventer*, 26 Neb., 222; *Union P. R. Co. v. Marston*, 30 Neb., 241; *Baltimore & O. R. Co. v. Campbell*, 36 O. St., 647; *Adams Express Co. v. Stettaners*, 61 Ill., 184; *Chicago, R. I. & P. R. Co. v. Conklin*, 32 Kan., 55; *Hannibal & St. J. R. Co. v. Swift*, 12 Wall. [U. S.], 262; *Hale v. New Jersey Steam Navigation Co.*, 15 Conn., 539; *Chicago, R. I. & P. R. Co. v. Witty*, 32 Neb., 279, and cases.

On refusal of court to submit questions for special findings: *Floaten v. Ferrell*, 24 Neb., 347; *Adams Express Co. v. Pollock*, 12 O. St., 618; *Ward v. Busack*, 46 Wis., 107.

On measure of damages: *Ward v. New York C. R. Co.*, 47 N. Y., 29; 5 Lawson, Remedial Rights & Privileges, sec. 2634, and cases; Hutchinson, Carriers, sec. 186.

On the constitutional provision forbidding common carriers from limiting their liabilities by contract: *Hart v. Chicago & N. W. R. Co.*, 69 Ia., 485; *Sherlock v. Alling*, 93 U. S., 99; *Johnson v. Chicago & P. Elevator Co.*, 119 U. S., 388; *Smith v. Alabama*, 124 U. S., 465; *State of Iowa v. Chicago, M. & St. P. R. Co.*, 33 Fed. Rep., 391; *Kimmish v. Ball*, 129 U. S., 217.

*J. B. Cessna*, also for defendant in error.

HARRISON, J.

W. E. Lawler, the plaintiff in the court below, commenced an action in the district court of Nuckolls county, Nebraska, to recover from the defendant railroad company

the value of certain property shipped by him over the defendant's line of road from Superior, in this state, to Trinidad, Colorado.   The petition pleaded the corporate character of the defendant, that it was a common carrier for hire, and owned and operated a line of railroad extending from the city of Superior, Nebraska, to Trinidad, Colorado, and had an office in Superior for the transaction and management of its business; that it made contracts for the shipment of freight to Superior from any point in the United States, and also from Superior to any point in the United States; that on the 20th day of December, 1890, the plaintiff resided in Superior and was the owner and possessed of a lot of household goods—a piano, chairs, tables, beds, bedsteads, etc., and a buggy, and also owned a stock of boots and shoes, shoemakers' tools, store fixtures, etc.; that on the said 20th day of December, 1890, this plaintiff desired to remove to the city of Trinidad, in the state of Colorado, to engage in business in said city, and he desired to have transported thither all his said household effects and his said stock of boots and shoes and shoemakers' tools and store fixtures, and this plaintiff, on said date, entered into a verbal contract with said defendant, in and by which the defendant agreed that the said plaintiff should load all of his said described property into a car to be furnished him by said defendant at its depot in the said city of Superior, and thereupon the said defendant agreed to transport said car and property to the city of Trinidad in the state of Colorado, and there safely deliver all said property to this plaintiff within a reasonable time from this date, in consideration of the sum of $100 freight charges, to be paid to the defendant by this plaintiff; that thereupon, on or about the said 20th of December, 1890, the plaintiff went to the said city of Trinidad, Colorado, and left one Ferd W. Saltow to load said property of plaintiff into the car agreed to be furnished by the said defendant, and to pay the freight of the same, and to see that the said property

was shipped, as agreed; on the 27th day of December,
1890, said Saltow put all of the said property above de-
scribed of the plaintiff's into a car furnished this plaintiff
by the defendant, on its contract, at its depot in the city of
Superior, Nebraska, for shipment to Trinidad, Colorado,
to be there delivered to plaintiff by the defendant as per
said contract, and the said Saltow, on behalf of the plaintiff,
then and there paid to the defendant the $100 compensa-
tion, or freight money, agreed upon between plaintiff and
the defendant, and for which the defendant agreed to trans-
port and safely deliver the said property of this plaintiff;
that thereupon the defendant issued and delivered to the
said Saltow, for this plaintiff, a way bill, bill of lading, or
receipt for said goods, but this plaintiff, nor the said Sal-
tow, did not examine nor read such receipt or bill of lad-
ing, and never knew the contents of same until after the
happening of the loss hereinafter mentioned, nor did the
said defendant, or any of his agents or servants, at any
time, until after the happening of the loss hereinafter men-
tioned, call the attention of this plaintiff or the said Sal-
tow to the conditions or terms of said bill of lading or
paper, and the plaintiff charges the fact to be that the said
paper, or bill of lading or receipt, by whatever name it
may be called, so delivered by the said defendant to the
said Saltow for this plaintiff, was not the contract entered
into between the plaintiff and defendant for the shipment
of the goods as aforesaid, and that neither the plaintiff, nor
the said Saltow, ever knew or consented to the terms of
the said bill of lading, and had they, or either of them,
known that it contained this clause, to-wit: "Car Emgt.
& Stk., val. $5.00 cwt.,"—which clause means, car of emi-
grant goods and live stock, of the value of $5.00 per hun-
dred weight,—would the said plaintiff or the said Saltow
have allowed said defendant to take said goods; but the
said defendant, nor any agent or servant of it, did not call
the attention of said Saltow or this plaintiff to said clause

in said receipt or bill of lading, but the said defendant and its agents fraudulently concealed from said Saltow and this plaintiff said clause in said bill of lading. The plaintiff further alleges that said clause in said bill of lading was never known to or seen by this plaintiff or the said Saltow, or either of them, until after the happening of the loss hereinafter mentioned, and that the same was not the contract of shipment made by this plaintiff with the said defendant for the shipment of said goods, but was an attempt on the part of the defendant to change, limit, and modify the contract actually made by said plaintiff with said defendant for the shipment of the goods; and the plaintiff further alleges that the said Saltow, when he received the said bill of lading or paper from the said defendant, supposed the same to be a mere receipt for the goods, and this plaintiff never saw the said bill of lading until after the destruction of the goods, as hereinafter stated; that said bill of lading or receipt, delivered by the said defendant to said Saltow for the said goods, was partly in writing and partly in print, and was and is, as nearly as the plaintiff can produce the same, in words and figures as follows:

"ATCHISON, TOPEKA & SANTA FE RAILROAD CO.,
"SUPERIOR, NEBR., STATION, Dec. 27, 1890.

" Received from W. E. Lawler the following described property, in apparent good order (or condition noted), contents and value unknown, to be transported over the road and delivered in like order to consignees, or the next company or carriers (if same is going beyond its line of road), for them to deliver to the place of destination of said property, it being distinctly understood that this company shall not be responsible as common carriers for said property beyond its line of road, or while at any of its stations awaiting delivery to such carriers, this company being liable as warehousemen only.

"To W. E. Lawler, Consignee, Trinidad, Colorado.
          "Charges advanced, $........

| Marks and numbers. | Articles. | Weights, subject to correction. |
|---|---|---|
| ——— | Car Emgt. & Stk., O. R. Rel. | |
| | Val. $5.00 cwt................... | 20,000 |

"Prepaid, $100.   Car 12144.
          "W. G. TAYLOR, *for the Company.*"

"And the plaintiff further alleges that the defendant and its agent, at the time and before said goods were put in said car and received by the said defendant, knew the character, quality, quantity, and the destination and ownership of said goods. The said defendant entered into the contract, as above stated, with the plaintiff to safely transport said goods from the city of Superior, Nebraska, and safely deliver said goods to this plaintiff at Trinidad, Colorado, for the sum of $100, and the said defendant furnished to this plaintiff a car for the shipment of said goods. The plaintiff loaded all of said goods in said car, consisting of household goods, including a piano, a buggy, a lot of bedsteads, bedding, and clothing, and the stock of boots and shoes and store fixtures, and the said defendant, with a full knowledge of their character, quality, quantity, ownership, and destination, accepted the said goods, took possession of the said car, and undertook to transport them from Superior, Nebraska, to Trinidad, Colorado, and that while the said goods were in transportation over the said railroad of the defendant, in some manner or means to this plaintiff unknown, but through the neglect and carelessness of the said defendant, or its agents or servants, said goods were either lost or destroyed or converted to the use of the said defendant, but the said defendant has never complied with the terms of its contract nor has it delivered said goods, or any part of the same, to this plaintiff, or to any person for him, at Trinidad, Colorado, or at any other place; that said goods, at the time

they were to be delivered to this plaintiff at Trinidad, Colorado, were then and there of the value of $7,000. Plaintiff asks judgment against defendant in the sum of $7,000, with interest at seven per cent per annum from January 1, 1891.

The defendant railroad company, for answer, denies each and every allegation of the petition, except such as are afterward admitted, qualified, or explained. Further answering it admits that it is a corporation, that it executed the bill of lading described in the petition, but states that it was executed November 27, 1890, and not on December 25, 1890, and alleges that if the car containing the property mentioned in said petition did not arrive at Trinidad as alleged in said petition, said defendant avers that the same was caused by the carelessness and negligence of the said Fred W. Saltow, the agent and servant of said plaintiff, who was accompanying and had charge of said car, for, on behalf of, and instead of said plaintiff, at said plaintiff's special instance and request, by carelessly and negligently leaving a burning lamp or lantern in said car, which set fire to said car, and that on account of which said plaintiff's property was consumed by fire on or about the 28th day of November, 1890, at Pierceville, in the state of Kansas, and that the same was not the result of any negligence or carelessness on the part of said defendant. The said defendant, further answering said petition, avers that on the 27th day of November, 1890, said plaintiff made, executed, and delivered to the said defendant herein his release and guaranty, whereby and by the terms of which he released the said defendant from all liability from damages or loss to said property arising from fire and other causes, a copy of said release and guaranty so signed by said plaintiff herein is hereto attached, marked " Exhibit A," and made a part of this answer.

"EXHIBIT A.

"ATCHISON, TOPEKA & SANTA FE RAILROAD CO.

"*Release and Guaranty.*

"No. .........                                    Nov. 27, 1890.

"In consideration of the transportation, at a reduced rate (as provided and shown in the classifications and tariffs published by this company, and which are hereby referred to and made a part hereof), of the following described property, viz.: One car emigrant outfit and stock, released to value of $5.00 per cwt., case of loss or damage from Superior, Nebraska, to Trinidad, Colorado, the same being consigned to W. E. Lawler, of Trinidad, via A., T. & S. F. Ry., hereby release all the companies over whose lines said property may pass to its destination from any and all liability from damage to, or loss of, said property arising from fire or wet, chafing or breaking, effect of heat or cold, leakage of liquids, loss of weight or otherwise of property in bags, decay of perishable property, injury to hidden contents of package, delays arising from breakage of or accident to engines, cars, tracks, or bridges, deficiency of side tracks, motive power of cars, or loss or damage by providential causes. And I hereby agree to hold such companies harmless and protect them against any claim which may arise from damage or loss as above specified. And I also guarantee that the through charges, unless prepaid, shall be paid at destination, as per bill of lading or the company's tariffs.

"Witness:                          W. E. LAWLER.

"E. S. AGUR.

"To be signed by a responsible party, and witnessed, when convenient, by the agent of the company.

"Agents please fill out properly, have signed and witnessed, and attached to way bill on which property is forwarded. For their own protection, agents should have a good press copy, or retain a duplicate release attached to copy of way bill."

To this answer the plaintiff filed a general denial to each and every allegation of new matter therein contained.

Of the issues thus joined a trial was had to the court and a jury, and the jury returned a verdict for plaintiff in the sum of $4,373.

The defendant filed a motion for a new trial, which was argued, submitted, and overruled, and the case was brought here by petition in error on the part of the railroad company for review.

The evidence establishes that W. E. Lawler, in November, 1890, was a resident of Superior, this state, and having concluded to remove to Trinidad, Colorado, applied to the agent of the plaintiff in error at Superior and made inquiry of him in regard to shipping his stock of boots and shoes, shoemakers' tools, and household goods to Trinidad. He was informed as to the different rates, that the rate on boots and shoes was $160, and on an emigrant outfit was $100 per car. It appears that Lawler had at this time in his employ a shoemaker, one Fred Saltow, who desired to go with him to Trinidad and whom Lawler wanted to take along and retain in his employment; that Lawler spoke to the agent in regard to Saltow and stated to him that he would like to get a pass for Saltow, or obtain transportation for him at as light an expense as possible, or none, if it could be so arranged; that it was agreed that some pigs were to be bought and put in the car and this would entitle them to pass one man through with the car. Lawler went east and left the loading of the goods into the car, etc., in the charge of Saltow, who, assisted by some other parties, placed the goods in the car and with them the two pigs which he had purchased; that Saltow signed the necessary papers for Lawler and received a pass, or transportation to Trinidad; that the car containing the goods was, in the usual course of business of the railroad, taken into a train and started on its way to its destination; that Saltow boarded the same train and the first night slept in the car which

contained Lawler's goods. It nowhere appears in the evidence that Saltow was to have any charge of the car, or to pay any attention to it. It does appear that he at one time contemplated delaying his departure for Trinidad until some days subsequent to the starting of the car containing the goods, but finally did go by the same train and had the key to the car in which the goods were shipped. At Pierceville, Kansas, the car in question was discovered to be on fire, and was totally destroyed, together with the goods. The claim of the company is that the car was set on fire by a coal oil lantern, which it is further claimed Saltow lighted and left in that condition in the car while he was riding in the caboose. There is a conflict in the evidence on this point and Saltow swears that the lantern was not burning. Some of the witnesses for the company state that he told them that he had left a lighted lantern in the car. The jury evidently believed Saltow, or, if they did not, concluded, from the evidence, that he was not properly in charge of the car for Lawler, either of which findings on the subject would be consistent with the verdict rendered by them. It appears that the agent of the company at Superior had full knowledge of the loading of the car, of all its contents, and probably some of the articles or things constituting the car load were included, following suggestions advanced by him at the time of the making of the contract for the car and the transportation of the goods to Trinidad. The foregoing is a statement of the testimony, sufficient, we think, to present its main or salient points which will be involved in our consideration of the case here.

The plaintiff in error sets forth in his petition in error different causes of complaint, or objection, to the rulings and actions of the court below during the trial of the suit there, but in the brief filed in this court does not argue all of them, but selection is made of those which were evidently considered the leading ones and most material, and

the argument in the brief is directed to the assignments of error thus chosen, and to them we will mainly, if not wholly, confine our examination.

The first point which challenges our attention is that the court erred in not submitting to the jury special findings requested by defendant, numbering in all fourteen, but more especially those numbered 1, 4, 8, 10, 13, and 14. Section 4813, Consolidated Statutes, 1893 (Cobbey), page 1108, providing for special findings, is as follows: "In every action for the recovery of money only, or specific real property, the jury, in their discretion, may render a general or special verdict. In all other cases the court may direct the jury to find a special verdict, in writing, upon all or any of the issues; and in all cases may instruct them, if they render a general verdict to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon."  *  *  *  It will be noticed that the word "may" is used in the statute wherever reference is made to the court's action in submitting special verdicts or findings to the jury. In the statutes of some states the word "shall" is used in this connection, and where the word "shall" is used the courts hold that when the findings are in proper form and the request to submit is at the proper time, the judge must submit them; but, on the other hand, where "may" is used, as in our law, it is discretionary with the trial judge or court to submit special findings or not, however proper or pertinent they may be in substance, or sufficient in form. (*Floaten v. Ferrell*, 24 Neb., 353; *Nebraska & Iowa Ins. Co. v. Christiensen*, 29 Neb., 581; *Adams Express Co. v. Pollock*, 12 O. St., 618; *Ward v. Busack*, 46 Wis., 407; *Webb v. Denver & R. G. W. R. Co.*, 24 Pac. Rep. [Utah], 616; *Texas & P. R. Co. v. Miller*, 15 S. W. Rep. [Tex.], 264; *City of Topeka v. Tuttle*, 5 Kan., 311–323; *Hairgrove v. Millington*, 8 Kan., 480.) In Oregon, under a section of the Code of that state which provides that the court may, in all cases,

instruct the jury, if they render a general verdict, to find upon particular questions of fact, to be stated in writing, it was held: "It is discretionary with the trial court whether it will require the jury to make special findings, and such discretion is not reviewable." (*Knahtla v. Oregon Short Line & U. N. R. Co.*, 27 Pac. Rep. [Ore.], 91, citing *Swift v. Mulkey*, 14 Ore., 59.) This is also supported by *Webb v. Denver & R. G. W. R. Co., supra.*) We think that it is the better rule that it is a discretion which must be soundly and reasonably exercised by the court or trial judge and its exercise may be reviewed, as may the exercise of other discretionary powers. We then have only the question on this branch of the case for determination, was the refusal to submit the special findings, requested by defendant, an abuse of the discretionary power of the trial court, or an improper exercise of it? The case was not a very complicated one and the facts to be considered and the questions to be determined from them, by the jury in their deliberations, were not very numerous, and after a careful and thorough examination of all the facts and circumstances of the case as presented and preserved in the record, the manner in which the case was tried and submitted to the jury, we cannot discover any arbitrary, or, partial exercise, or abuse of discretion in the refusal of the trial judge to present the fourteen questions to the jury for them to answer.

Counsel for plaintiff in error, during his cross-examination of Lawler in the lower court, asked him the following questions: "Your business had been unsatisfactory for considerable time before that, had it not?" "You may state if you had not been advertising, for a long time before leaving Superior, that you were selling these goods at cost." "You had been selling your stock of boots and shoes at cost, or at reduced prices, and were you not closing out your stock for considerable length of time before leaving Superior?" To each of which the counsel for Law-

ler interposed an objection to the first one quoted, that it was immaterial ; to the second, that it was incompetent and immaterial; and to the third, that it was incompetent, immaterial, and irrelevant. These objections were sustained by the court. The counsel for plaintiff in error in the examination of W. G. Taylor, a witness called by his client, the company, interrogated him as follows: "State if you know whether, before he quit business, he advertised that he would sell his stock at reduced prices." "State if you know as a matter of fact whether the plaintiff did, for several months before quitting the sale of boots and shoes, try to sell his goods at reduced prices or at cost." Each of which interrogatories was objected to by counsel for Lawler as being "incompetent, immaterial, and irrelevant," and the objections were sustained by the court. The action of the judge in sustaining the several objections above indicated is assigned for error in paragraphs numbers 23, 24, 25, 29, and 30 of the petition in error, and will be noticed together, as the reasoning which will apply to one will apply with equal force to all. It is contended by counsel for plaintiff in error that inasmuch as Lawler had testified that he fixed the value of the stock of boots and shoes, by adding to the cost price thereof freight to Superior and also freight from Superior to Trinidad, that the evidence sought to be elicited by the foregoing interrogatories was material and competent on the question of the value of the stock of goods, and that the value of the stock of boots and shoes was the measure of Lawler's damages if he recovered any. There would be some force in the argument of counsel for plaintiff in error if the measure of Lawler's damages was to be determined by any value which the stock of boots and shoes had in Superior, as the questions were all directed to what transpired in Superior, but the rule for determining Lawler's damages in this case was the value of the goods at their place of destination (Trinidad) at the time they should have been delivered there to him

by the company, hence the testimony excluded by the court in sustaining the foregoing objections could have no possible bearing on the point to be determined, *i. e.*, the value of the goods in Trinidad, Colorado, and the court did not err in its action. As to the rule of the measure of damages see *Ward v. New York C. R. Co.*, 47 N. Y., 29; 5 Lawson, Rights, Remedies & Practice, sec. 2634, and cases cited; Hutchinson, Carriers, sec. 769.

During the cross-examination of Lawler he was asked: "Why did he give him a pass; what did you understand about it why a man should have a pass to go with an emigrant outfit? Objected to, as to the last part of the question, as incompetent and immaterial. Objection sustained." He was further interrogated, and the record made as follows: "The only object in putting those two pigs in the car was to make an emigrant outfit of it, was it not? Objected to, as incompetent, irrelevant, and immaterial. Sustained. Exception." In the examination of Taylor, witness for the company, the agent with whom Lawler made his contract for the car and the transportation of his property, the following interrogatory was propounded to him : "Was there anything said between you and the plaintiff about the reason why a man was permitted to go with an emigrant outfit?" The counsel for Lawler objected to the question, as leading, which objection was sustained. In the course of his testimony this witness testified as follows : "I cannot state why it was made out to Mr. Saltow any more than the fact that it was the understanding he was to accompany the car." Then came the question, "From whom?" Counsel for Lawler here objected and moved as follows: "Objected to, and plaintiff moves to strike out the last answer as to what was the understanding. Sustained. Exception." It is alleged that the court erred in its action in each and every of the above instances, for the reason that the evidence which would have appeared in the answers to the interrogatories, to which objections were

sustained, would have been pertinent to the issue of the au-
thority of Saltow from Lawler to go with the car and have
charge of it en route.   Conceding that the evidence in each
of the foregoing instances would have been competent and
relevant, and have had a bearing on any material issue in the
case, which, to say the least, is doubtful, the error, if any,
committed by the court was cured, for in each particular
the same evidence had been given in a prior answer of the
witness, or was contained in an answer to an interrogatory
subsequently put to the same witness, and the plaintiff in
error was not injured by the action of the court. (*Jonasèn
v. Kennedy*, 39 Neb., 313.)

In testifying to the value of various articles which were
put in the car at Superior and afterwards destroyed by fire,
Lawler referred to a memorandum which he stated he
made at Trinidad, soon after the car was burned, and the
immediate cause of his making it was his being asked by
the agent of the company to give him a statement of the
values of the articles burned.   Counsel for the company
objected to the use of this memorandum by Lawler, which
objection was overruled by the court and the witness al-
lowed to use it.   This is assigned as error.   By an exami-
nation of all the testimony of this witness in respect to
this memorandum, we are satisfied that it was made soon
after the occurrence of the burning of the car and property;
that it was prepared by the witness at a time when he knew
it to be a correct list, or as nearly correct as could be made,
of the articles burned and of their respective values, and
that, after refreshing his memory from it, he was enabled to
testify from his own knowledge as to the original facts, in
so far as it is possible for a person to have any knowledge
of such facts as were then being investigated.   This brought
it within the rule governing the allowance of the use of a
memorandum by a witness to refresh his memory, and
there was no error in the court permitting the witness to
refer to the memorandum. (See *Schuyler Nat. Bank v. Bol-*

*long*, 24 Neb., 825; *Bonnet v. Glattfeldt*, 120 Ill., 166; 1 Greenleaf, Evidence, secs. 436–439; 1 Wharton, Evidence, sec. 522, and note.)

J. W. Lusk, one of the witnesses for the company, was a trainman in the employ of plaintiff in error on the route over which the car had passed, just prior to the time it arrived at Pierceville and was discovered to be on fire, and had been so employed and on this route for seven years, and testified that he was well acquainted with the road, knew its general direction, curves, cuts, etc., and knew which way the wind was blowing on the day and night the train and car in question passed over the route, and testified that the car containing Lawler's property was the thirteenth car in number, counting back from the engine pulling the train. This witness was asked a question (quoted below), to which counsel for Lawler objected and the objection was sustained. The ruling is assigned as error. The record is as follows: "You may state whether or not, from any point on the road between Dodge City and Pierceville, the road curves toward the south sufficiently to carry sparks from the engine to a car thirteen cars back. Objected to, as calling for a conclusion of the witness. Objection sustained. Exception." The contention of counsel for plaintiff in error is that the testimony called for by the foregoing interrogatory would have been in the nature of expert testimony and should have been admitted. We have no doubt of the ability of the witness as a competent railroad or trainman, or of his knowledge of the portion of the road of plaintiff in error over which the car was drawn immediately prior to its arrival in Pierceville, where it was found to be burning; but that he was competent to testify as an expert and give as an opinion the distance to which, or direction in which, the wind which blows across these western prairies will carry a spark of fire and where it will deposit it we cannot agree. This would be extending the doctrine of expert testimony

far beyond any reasonable limits and wandering far away in the mazes of uncertainty, speculation, and conjecture. It would be equivalent to asking the witness and allowing him to testify whether he had arrived at a conclusion as to a spark from the engine being the cause of the burning, which would clearly not be competent. Doubtless it was competent for this witness to testify as he did in regard to the wind, the quarter to which and from which it was blowing, its direction relatively to the train, whether with or across or against its path, to state the trend of the line of the company's road, which way the train was running, and the position in the train of the car containing Lawler's property in relation to that of the engine, relate the facts within his knowledge, but it was not competent for him to give his conclusions drawn from such facts. The jury, being composed of men of ordinary knowledge and experience, when put in possession of the facts, were as capable of seeing what inferences should be drawn from them as the witness; hence, his opinion was not competent. (Rogers, Expert Testimony, p. 12, sec. 8.) Furthermore, this same witness was, prior to this time, asked the following question: "Now state, if you know, taking into consideration your experience, your knowledge and the location of the burning car in that train, and the direction of the wind and the direction in which the train was running,—state whether or not the car could have caught fire from the engine." To which he answered, and this without an objection. If it can be said that the evidence in reference to the sparks would have been in even the remotest degree competent or material, the plaintiff in error had received the full benefit of it in the answer to the question last quoted, and it was not error to exclude a repetition of it, although not asked for in the same words as in the prior interrogatory. This is too well settled a rule to need any citations to support its statement.

The further allegations of error were made that the court

refused to admit in evidence the contract releasing the company from liability for damage by fire and further limiting
any recovery of damages to a valuation of the goods of
"$5 per cwt.," and in ignoring the stipulations and provisions in contracts made between the parties, in second, third,
fourth, and fifth instructions given by the court. The
counsel for the company, in this branch of the case, enters
into a very able discussion of the validity of the portion of
section 4 of article 11 of the constitution of this state,
which declares that "the liability of railroad corporations
as common carriers shall never be limited," contending that
this provision is invalid and of no effect, because it conflicts
with, as he states it in his argument, "the exclusive rights
of congress to regulate 'commerce' between the states."
Whether he is right in his contention or not, or whether it
is settled or established by the weight of authority, or sustained by the best reason, that the states cannot in any manner regulate or legislate so as to affect the portions of such
contracts as the one in the case at bar, as would be governed
by the above provision, are not necessarily to be determined
in reaching a decision of this branch of the case. We think
they can, and will more rightfully be decided and determined upon the ground of the invalidity of the contract, as
an attempt to limit the common law liability of the company under an agreement, in its capacity as a common carrier. In the case of *Chicago, R. I. & P. R. Co. v. Witty,* 32
Neb., 275, a contract was entered into between the railroad
company and Witty for the shipment of a horse from Henry,
Illinois, to Jansen, Nebraska, and there was a stipulation
contained therein by which the company was only liable
for injuries to the horse occurring by reason of its gross negligence, and then for not to exceed the sum of $100. This
was held to be invalid under the rule of the common law.
Norval, J., in the text of the opinion states: "We do not
doubt that a carrier may, by contract fairly entered into,
limit in some respect its liability as an insurer, or its com-

mon law liability, where the restriction imposed is reasonable. But, on grounds of public policy, the law has wisely prohibited a common carrier of freight from in any manner contracting against its own negligence. This doctrine was distinctly held and applied in *Atchison & N. R. Co. v. Washburn*, 5 Neb., 117. GANTT, J., in the opinion says: 'The common law fixes the degree of care and diligence due from railroad companies as common carriers; and a failure to exercise this care and diligence is negligence, without any legal distinction as being gross or ordinary; and the better rule of law, sustained by the weight of authority, is, that it is against the policy of the law to allow stipulations which will relieve the company from the exercise of that care and diligence, or which, in other words, will excuse them for negligence in the performance of that duty.' Decisions are to be found which lay down a contrary doctrine, but the better reason as well as the current of authority in this country, sustain, the rule announced by this court in the case referred to;" and cites in support of the doctrine announced: *New York C. R. Co. v. Lockwood*, 17 Wall. [U. S.], 357; *Grand Trunk R. Co. v. Stevens*, 95 U. S., 655 *Shriver v. Sioux City & St. P. R. Co.*, 24 Minn., 506; *Welsh v. Pittsburg & C. R. Co.*, 10 O. St., 65; *Kiff v. Atchison, T. & S. F. R. Co.*, 4 Pac. Rep. [Kan.], 401; *Durgin v. American Express Co.*, 20 Atl. Rep. [N. H.], 328; *Morrison v. Phillips Construction Co.*, 44 Wis., 405, and a great many more which we will not repeat here. (See, also, *Louisville, N. A. & C. R. Co. v. Faylor*, 25 Ohio L. J., 55, 25 N. E. Rep. [Ind.], 869; *Eells v. St. Louis, K. & N. W. R. Co.*, 52 Fed. Rep., 903; *Galveston, H. & S. A. R. Co. v. Ball*, 16 S. W. Rep. [Tex.], 441; *International & G. N. R. Co. v. Folts*, 22 S. W. Rep. [Tex.], 541; *Johnstone v. Richmond & D. R. Co.*, 17 S. E. Rep. [S. Car.], 512; *Baughman v. Louisville, E. & St. L. R. Co.*, 21 S. W. Rep. [Ky.], 757; *Ambach v. Baltimore & O. R. Co.*, 30 Ohio L. J., 111.)

On the subject of limitation as to the amount of damages
it is said in the foregoing opinion: "It is claimed that
the limitation in the contract, as to the amount of damages
in case of loss or injury, does not tend to exempt the carrier
from liability for negligence. The authorities cited in
brief of plaintiff in error so hold, but we are unable to
draw such a distinction. If a carrier cannot, by stipula-
tion, be relieved from liability for its negligence, it is
equally clear, for the same reason, that it cannot, by con-
tract with the shipper, limit the amount of damages result-
ing from such negligence. If the plaintiff in error can
lawfully stipulate that the damages shall not exceed $100,.
it could likewise contract that it should not be more than
$25, or any smaller sum, thereby practically relieving it-
self from all responsibility for injuries occasioned by its
own negligence. That would be accomplished indirectly
what it could not lawfully do directly. The proof fully
shows that the horse, when shipped, was worth not less
than $400, and to hold that the owner could only recover
one-fourth that sum would be to exempt the carrier from
a part of the liability assumed by it for injuries resulting
from its own carelessness or negligence. This the law
will not sanction;" citing Morrison v. Phillips Construc-
tion Co., 44 Wis., 405; Kansas City, St. J. & C. B. R. Co
v. Simpson, 30 Kan., 645; Chicago, St. L. & N. O. R. Co.
v. Abels, 60 Miss., 1017; United States Express Co. v. Back-
man, 28 O. St., 144; Boehl v. Chicago, M. & St. P. R. Co.
46 N. W. Rep. [Minn.], 333.

The contract in the case at bar comes directly within the
rule of the common law as set forth in the case from which
we have quoted, being somewhat stronger in its terms and
provisions than the contract passed upon in that case, in
that it absolutely exempts the company from any and all
liability for damages caused by fire, etc., and places the value
at "$5 per cwt.," without any reference to negligence on
the part of the road in any degree, while the one in the case

referred to made the company liable for gross negligence.
We are satisfied that the provisions of the ageement be-
tween the railroad company and Lawler, whereby the limi-
tation was attempted to be placed upon the liability of
the road for loss or damage by fire, and valuing the goods,
were void as against public policy.    There is another ele-
ment which enters into and is connected with this branch
of the case, which is embraced in the proposition that when
the plaintiff in the court below had proved the delivery of
the property to the railroad and its failure to deliver it at
its destination, it raised the presumption of negligence on
the part of the company, and it devolved upon it to over-
come such presumption by proof, and that it was not suffi-
cient for it to show that the goods were destroyed by fire,
but it must go further and show that there was no negli-
gence on its part.

In *Louisville & N. R. Co. v. Touart*, 11 So. Rep. [Ala.],
756, where the company was sued for failing to deliver
five bales of cotton received by it as a common carrier,
consigned to the plaintiff in the case at Mobile, the de-
fense was that the contract set out in the bill of lading
contained a provision that the railroad was not liable "for
loss or damage on any articles of property whatever by
fire or other casualty while in transit or while in depots or
places for reception."    The evidence disclosed that the cot-
ton was destroyed by fire while in the depot warehouse in
charge of the company.    There was a verdict and judg-
ment for the plaintiff, for the value of the cotton, and on
error to the supreme court the court in its opinion says:
"There are some principles of law applicable to the evi-
dence which will dispose of the charges requested by the
defendant.    At common law a common carrier, to whom was
intrusted goods for transportation, was liable for all losses
not the result of the act of God, the public enemy, or the
party complaining.    It may safely be said, as a conclusion
from numerous decisions, that by special contract a com-

mon carrier may limit his liability, and protect himself against losses by accident and losses which are not the result of fault or negligence on his part or that of his employes. After showing the delivery of the cotton and its consignment to plaintiff at Mobile, and the failure by the common carrier, defendant to deliver the same within a reasonable time, the plaintiff's case was made out, and he was entitled to recover. At common law nothing but the act of God, the common enemy, or plaintiff's own fault could relieve the defendant of the case made against him by such proof, and the burden rested on the common carrier to prove his defense. His responsibility as a common carrier is the same now as at common law, except so far as limited by special contract. If the loss resulted from some cause excepted by the contract, the carrier must plead the exception specially, and his plea, to present a defense, must aver that the excepted cause was not the result of negligence on his part. It is not enough to sustain this plea to show that the loss was the result of a cause excepted by the contract; he must go further and affirmatively show that the cause resulted without fault on his part. The contract as framed does not relieve him of this burden."

In 2 Greenleaf, Evidence, sec. 219, we find the following: "In all cases of loss by a 'common carrier,' the 'burden of proof' is on him to show that the loss was occasioned by the act of God, or by public enemies; and if the acceptance of the goods was special, the burden of proof is still on the carrier to show not only that the cause of the loss was within the terms of the exception, but also that there was on his part no negligence or want of due care."

The case of *Ryan v. Missouri, K. & T. R. Co.*, 57 Am. Rep. [Tex.], 589, was an action against the company for the value of goods which it was alleged were not delivered at their destination, but were converted by the company.

The defense was that the goods were burned without any negligence on the part of the road. The bill of lading exempted the company from liability for loss by fire. The evidence showed that the goods were destroyed by fire while in the possession of the company, at night, while in the cars at the depot and before the transportation was completed. It was held "that it devolved on the carrier to show that the fire did not occur through its negligence;" and in the body of the opinion it was stated: "In a suit of this character it is sufficient for the plaintiff to aver and prove that the goods were delivered to the carrier, and that they have not been received at their point of destination. This is said to make a *prima facie* case of negligence which the carrier must rebut or the plaintiff will recover. He may rebut it only in one way, and that is by showing that the goods were lost by one of the exceptions known to the common law, or one of the special exceptions reserved in this contract with the shipper. If by neither a common law exception nor one especially reserved he is exonerated, he must show that the loss happened without negligence on his part. Take for instance the exception of loss by fire. The contract recites merely that if the loss occurs by fire the carrier should not be liable, but the law incorporates the words 'without negligence on the part of the carrier.' What the law inserts is as much a part of the contract as what is expressly written in it. When, therefore, the plaintiff makes out a *prima facie* case of negligence, by proving that the goods were not delivered, is this case rebutted by proof that they were not delivered by reason of a fact which may have existed, and the carrier still have been negligent? If so, he can stop with the presumption of negligence arising from non-delivery still resting upon him, and call upon his adversary to further strengthen his own *prima facie* case, or it shall lose this character altogether. This would be against all the rules of evidence." (See *Spellman v. Lincoln Rapid Transit Co.*, 36 Neb., 890;

*Central R. & B. Co. v. Hasselkus,* 17 S. E. Rep. [Ga.], 838; *Newport News & M. V. R. Co. v. Holmes,* 14 Ky. L. Rep., 853; *Missouri P. R. Co. v. China Mfg. Co.,* 14 S. W. Rep. [Tex.], 785; *Browning v. Goodrich Transportation Co.,* 47 N. W. Rep. [Wis.], 428; 4 Lawson, Rights, Remedies & Practice, sec. 1860.)

In the case at bar the company attempted to show that fire was occasioned by a lighted coal oil lantern left in the car by Saltow, and that Saltow was in charge of the car for Lawler; but these were disputed points in the testimony, and, as we have once before stated, the jury evidently determined them in Lawler's favor, and the evidence was sufficient to sustain such a finding; further than this there was very little or no attempt on the part of the company to prove anything in reference to negligence or the lack of it, or to explain the cause of the loss or the occasion of the fire which destroyed Lawler's goods. We are fully satisfied that the court below did not err on this branch of the case.

There is but one more error of those assigned, which is argued in the brief filed in behalf of plaintiff in error, which is that the court refused to instruct the jury that "the plaintiff cannot recover in this case, if the fire which destroyed his property resulted from any act of the plaintiff or his servant or agent, whether such act was such as to constitute negligence or not." An examination of the instructions given to the jury convinces us that they were fully instructed on the points covered by the instruction requested by plaintiff in error quoted above, and that there was no error in refusing to give it. This disposes of all the assignments of error discussed in the brief of counsel for plaintiff in error, and we conclude that there were no rulings of the court below complained of which were erroneous or call for a reversal of the case. The judgment of the lower court is

AFFIRMED.