CITY OF KEARNEY v. CAROLINE THEMANSON, ADMINISTRATRIX.

FILED APRIL 10, 1896.     No. 7790.

1. **Surface Water: DAMAGES.** The doctrine of this court is the rule of the common law, that surface water is a common enemy, and an owner may defend his premises against it by dike or embankment, and if damages result to an adjoining proprietor by reason of such defense, he is not liable therefor.

2. ———: ———: NEGLIGENCE. But this rule is a general one and subject to another common law rule, that a proprietor must so use his own property as not to unnecessarily and negligently injure his neighbor.

3. ———: ———: ———. And therefore every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose, and unless guilty of some act of negligence in the manner of its execution, will not be answerable to an adjoining proprietor although he may thereby cause the surface

water to flow on the premises of the latter to his damage; but if in the execution of such enterprise he is guilty of negligence, which is the natural and proximate cause of injury to his neighbor, he is accountable therefor. *Anheuser-Busch Brewing Association v. Peterson*, 41 Neb., 897; *Lincoln Street R. Co. v. Adams*, 41 Neb., 737; *Lincoln & B. H. R. Co. v. Sutherland*, 44 Neb., 526; *City of Beatrice v. Leary*, 45 Neb., 149, and *Jacobson v. Van Boening*, 48 Neb., 80, followed and affirmed.

4. Witnesses: MEMORANDA. A memorandum which it appears was prepared at the time of the fact in question or soon afterwards, which the witness knew to be correct at the time it was made, may be used by the witness to refresh his memory. (*Atchison, T. & S. F. R. Co. v. Lawler*, 40 Neb., 356.)

ERROR from the district court of Buffalo county. Tried below before HOLCOMB, J.

*F. E. Beeman* and *E. C. Calkins*, for plaintiff in error.

*B. O. Hostetler, contra.*

RAGAN, C.

Caroline Themanson sued the city of Kearney in the district court of Buffalo county for damages. For cause of action she alleged that in 1883 the city built an embankment about three feet high in the street in front of the property occupied by her, without first having established the grade of the said street by ordinance; that prior to the building of said embankment the surface water from a large area of territory had been accustomed to flow eastward north of her building, and across the street the grade of which the city raised; that the city, when it built the embankment, negligently neglected to build a culvert or other opening in the embankment, and that in April, 1884, during a heavy rain, such surface waters were stopped by the embankment and flowed back into her cellar and injured a large amount of groceries stored therein. This case has been twice before in this court, and for a more extended statement of the facts and issues made by the pleadings the reader is referred to *City of Kearney v. Themanson*, 25 Neb., 147, and

*Themanson v. City of Kearney*, 35 Neb., 881.  Mrs. Theman-
son had a judgment in the court below and the city of
Kearney has brought the same here for review.

1.  The first argument in the brief, in effect, is that if it
be admitted that Mrs. Themanson's property was dam-
aged by surface water flowing into her cellar, that this
surface water was stopped in its course and turned back
into the cellar by the embankment made by the city in
the street, and that such damage and such turning back
of the surface water were caused by the negligence of the
city in not building a culvert or an opening in the em-
bankment, yet, nevertheless, the city is not liable, be-
cause it is protected by the rule of the common law that
surface water is a common enemy and that an owner
may defend his premises against it, and if damages result
to adjoining proprietors by reason of such defense he is
not liable therefor.  But the facts averred by the plaint-
iff as a cause of action against the city, if proved, exclude
the plaintiff in error from the protection of this general
common law rule.  The case at bar falls within and is
governed and controlled by the decisions of this court in
*Lincoln Street R. Co. v. Adams*, 41 Neb., 737; *Anheuser-
Busch Brewing Association v. Peterson*, 41 Neb., 897; *Lincoln
& B. H. R. Co. v. Sutherland*, 44 Neb., 526; *City of Beatrice
v. Leary*, 45 Neb., 149, and *Jacobson v. Van Boening*, 48
Neb., 80.  This rule of the common law was invoked as
a defense in each of those cases, but the conclusion
reached by the court was that, while the common law
rule as to surface water was in force in this state, that it
was a general one and that it was subject to another
common law rule, namely, that a proprietor must so use
his own property as not to unnecessarily and negligently
injure his neighbor's; and that, therefore, every proprie-
tor might lawfully improve his property by doing what
was reasonably necessary for that purpose, and, unless
guilty of some act of negligence in the manner of its exe-
cution, would not be answerable to an adjoining proprie-
tor although he might thereby cause the surface water

to flow on the premises of the latter to his damage; but if in the execution of such enterprise he was guilty of negligence which was the natural and proximate cause of injury to his neighbor, he would be accountable therefor. We do not feel called upon to re-examine these cases. We are satisfied that they correctly state the law and we accordingly adhere to them. The mere right of a proprietor to defend himself against surface water without being responsible for the consequences has never been denied by this court. But there may be a difference between the possession of a right and the manner of its exercise. In the case at bar it may be conceded that the city had a right to grade the street in question,—to build the embankment therein. This right we do not call in question. It is only the manner of the exercise of that right that is involved in this litigation.

2. The next assignment of error that we notice is the ruling of the district court in permitting the witnesses Orrin and Albert Themanson to testify from a memorandum as to the goods that were injured or destroyed. It appears from the record that the water flowed into this cellar in the night, and that very soon thereafter the memorandum of the goods injured and destroyed was made. To lay the foundation for permitting these witnesses to testify from this memorandum, Orrin was examined as follows:

Q. You may state to the jury whether or not you, in connection with others, made an inventory of the goods that were in the cellar. State what you did about that.

A. We took an inventory of the goods and Albert Themanson wrote it down—the amount that was in the cellar.   *   *   *

Q. Did you assist?

A. Yes, sir.

Q. Do you think you would recognize the inventory if you should see it?

A. Yes, sir; I would recognize the articles.

Q. Look at that paper and see if that is the inventory you refer to.

A. Yes, sir, as near as my memory would serve me.

Q. Did you see the paper made?

A. Yes, sir.   I was there at the time it was made.   *   *

Q. Did you at that time examine the paper and know that it contained an exact list of the articles damaged?

A. Yes, sir.

Albert Themanson was then called and testified as follows:

Q. Do you remember the fact of the cellar of your father being flooded on the 1st of April, 1884?

A. Yes, sir.

Q. State whether or not there was an inventory made of the goods that were in the cellar at the time of the flood.

A. Yes, sir.   There was an inventory made shortly after.

Q. Examine that paper and state whether that is the inventory or not that was made at that time.

A. Yes, sir, it is the inventory.

Q. Did you make that yourself?

A. Yes, sir, I did.

Q. In whose handwriting is that part which is written in ink?

A. That is mine.

Q. Who was with you when you did it?

A. Mr. Orrin.

Q. Did someone call off and you set it down?

A. Sometimes they would and sometimes I would take the number down myself.

Q. In whose handwriting are the pencil marks at the right of the goods?

A. That is my handwriting.

Q. When did you make that?

A. That was made at the time.

Q. State whether or not you examined that paper at the time it was made.

A. Yes, sir.

Q. Do you know whether it was correct at that time?

A. Yes, sir, to the best of my knowledge.

We do not think the court erred in permitting these witnesses to use this memorandum.  In *Atchison, T. & S. F. R. Co. v. Lawler*, 40 Neb., 356, this court said: "A memorandum which it appears was prepared at the time of the fact in question, or soon afterwards, which the witness knew to be correct at the time it was made, may be used by the witness to refresh his memory."

3. It is also insisted that the verdict of the jury is not supported by sufficient evidence.  It is not disputed that Themanson's goods were damaged.  It is not insisted that the amount of damages awarded her by the jury is excessive.   It is not claimed that the city had ever established by ordinance the grade of the street in which it built the embankment; that when it built said embankment it put a culvert or other opening therein for the escape of surface waters that were accustomed to flow east across the street, nor that the property of Mrs. Themanson was not damaged by surface waters, but the argument that the verdict lacks sufficient evidence to support it is based on the contention that there were windows in Mrs. Themanson's cellar; that these windows extended below the level of the ground on which the building was erected, and that the windows were not protected by embankments or bulk-heads, and that the water which flowed into the cellar and damaged the goods did so because the windows were not thus protected.   There are two answers to this argument: (1.) There is some evidence in the record that the windows were protected by embankments or bulk-heads.   (2.) The evidence justifies a finding by the jury that the presence of the water in the cellar was due to the negligence of the city in failing to put a culvert in its embankment, and not to a want of bulk-heads around the windows in the cellar.

Counsel for the city complain of some instructions given by the trial court and some instructions which the court refused to give.   It is not necessary to quote these

instructions and it must suffice to say that the action of the court was entirely proper. There is no error in the record, and its judgment is

AFFIRMED.