116

IVAN ANDERSON, PLAINTIFF IN ERROR, V. STATE OF
NEBRASKA, DEFENDANT IN ERROR.

33 N. W. 2d 362

Filed July 20, 1948. No. 32417.

*Mothersead & Wright* and *Robert G. Simmons, Jr.,* for plaintiff in error.

*Walter R. Johnson,* Attorney General, *Clarence S. Beck,* and *Homer L. Kyle,* for defendant in error.

Heard before PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

PAINE, J.

The defendant as plaintiff in error brings an appeal to this court from a conviction for involuntary manslaughter in the alleged death of Virginia Buechler, arising out of an automobile accident on May 18, 1947. The information charged that such death occurred while defendant was driving an automobile on the public highway in an unlawful, reckless, careless, and negligent manner, while under the influence of intoxicating liquor. After the jury returned a verdict of guilty and

the motion for new trial was overruled, the trial court sentenced the defendant to five years in the penitentiary.

We will set out a brief statement of the facts shown in the bill of exceptions. The accident happened about 4:15 on the afternoon of Sunday, May 18, 1947. Carl Schwartzkopf was driving west on Highway No. 26 at about 50 miles an hour. He was accompanied by Miss Virginia Buechler in a 1947 Studebaker automobile. At a point about one mile east of the city of Scottsbluff a Plymouth coupé, driven east by defendant, collided with them, while Schwartzkopf was on the north and his right-hand side of the road. Miss Buechler was removed to the Methodist Hospital in Scottsbluff. Carl Schwartzkopf's right knee, arm, and jaw were injured.

The defendant testified that he lived with his wife and four-year-old son at the home of his wife's parents, and was 35 years old. He served in the South Pacific in the last war, where he worked on repairing amphibious tanks. When he came back from the war he had failed to find a place to live, but had secured jobs in a blacksmith shop and also at a garage.

The evidence discloses that the defendant arose about 9 a. m. on this Sunday and took a drink of whisky. He spent the day working on his Plymouth coupé. He testified that he bought it as a junker; that it would not run when purchased; that he had to fix the valves, rings, and pins; that it needed a couple of tires and the radiator repaired; and that the steering sector was well worn, along with the tie rod ends, which made an excessive play in the steering mechanism. Before the day of the accident he had fixed it up so he had been able to drive it in all about ten miles.

At about four o'clock on the afternoon of the accident he started for Lake Minatare. He stopped at a filling station not far from home, where he got gas and oil for his car. He went in the rest room and took a drink of whisky from the bottle in his pocket, but denied that

he drank any whisky during the day except when he first got up.

He had proceeded east from the filling station about two miles and passed other cars; and while attempting to pass a car he saw oncoming traffic and pulled back to the south and his right side, but his brakes held unevenly. The left brakes held too tightly and caused his vehicle to skid over into the north lane, where it collided head-on with the Schwartzkopf car, in which Virginia Buechler was a passenger. Defendant sustained injuries to his leg and a slight concussion. A cork came out of the bottle of whisky and some of the contents were spilled upon his clothing.

The chief of police of Scottsbluff and two members of the state highway patrol arrived very shortly after the accident. They testified that there was a strong smell of whisky on the defendant's breath and in defendant's car. One of them testified that Anderson was very thick-tongued and unsteady on his feet, sort of reeled around, and that he was under the influence of intoxicating liquor at the time of the accident. When they got him to the hospital they took a bottle of whisky out of his pocket. There was also a bottle in the glove compartment in his car, which was nearly empty.

Dr. Riddell testified that he treated Virginia Buechler and first saw her about 5 p. m. on May 18 at the Methodist Hospital in Scottsbluff; that her left jugular vein and windpipe were severed in two, her skull fractured, and she was covered with lacerations and bruises. He described the surgical and medical treatment given her, but said that she died on May 21 as the result of a cerebral hemorrhage resulting from a compound fracture of the skull. In answer to a hypothetical question, he testified that in his opinion the injuries which resulted in her death were caused by the automobile collision. On cross-examination he testified that she was a stranger to him, as he had never seen her before, and that she was continuously unconscious until the time she died.

The defendant discussed the following assignments of error: The district court erred in submitting this cause to the jury when the information failed to allege the time and place of death; failing to declare a mistrial on misconduct of the county attorney; submitting issues to the jury when there was no competent proof of the death of the persons alleged to have been killed; permitting the county attorney to introduce evidence indicating that defendant knew of the defective condition of his motor vehicle; instructing the jury that knowledge of mechanical defect is immaterial; in not striking the testimony of a witness who had refreshed his recollection from notes made by another; sentencing the defendant for a period of five years; the verdict is contrary to the evidence; the verdict is contrary to law; the district court erred in not withdrawing from the consideration of the jury the question of whether or not plaintiff in error was intoxicated while driving a motor vehicle; and in overruling the motion for new trial.

We will consider the first error alleged, that the information was fatally defective in that it failed to allege the time and place of death. The information charged on that element of the case that on May 18, 1947, the defendant wounded and injured Virginia Buechler, from the effects of which she died.

The "manslaughter" statute, section 28-403, R. S. 1943, provides generally that if a person shall unlawfully kill another without malice, unintentionally, while in the commission of some unlawful act, it is manslaughter. Section 39-727, R. S. 1943, makes it unlawful to operate a motor vehicle while under the influence of alcoholic liquor.

In Crawford v. State, 116 Neb. 125, 216 N. W. 294, the language of the information was very similar to the one at bar, except that it charged "and being in a state of intoxication did cause the automobile which he was driving to collide with another * * *, thereby wounding and injuring one Clarence Nelson, from the effects

of which the said Clarence Nelson died;" while in the case at bar it is the same except for the words, "while under the influence of intoxicating liquor." The information there was held good.

The defendant cites us to what he styles the leading case on the subject, that of Ball v. United States, 140 U. S. 118, 11 S. Ct. 761, 35 L. Ed. 377, in which the United States Supreme Court reversed a case holding generally that the indictment was fatally defective and that a capital conviction, even if otherwise regular, could not be sustained if the indictment failed to allege the time and place of death.

However, our Nebraska court has held that the sufficiency of an information charging an offense under the law of our state is not a federal question. See Chadek v. State, 138 Neb. 626, 294 N. W. 384.

In a case in which a man driving an automobile admitted drinking beer and committed manslaughter by hitting a 17-year-old boy, who was roller-skating in the street, and killing him, this court said: "The Criminal Code of this state does not require that detailed particulars of the crime be set forth in the information in the meticulous manner prescribed by the common law." Cowan v. State, 140 Neb. 837, 2 N. W. 2d 111.

The manslaughter statute, section 28-403, R. S. 1943, does not make the time and place of the death an essential element of the crime; and section 29-1512, R. S. 1943, says it is not necessary to set forth the manner or means by which the death was caused. If it informs the defendant of the charge against him, in order that he may plead the judgment as a bar to any subsequent prosecution for the same offense, it is sufficient. See, Puckett v. State, 144 Neb. 876, 15 N. W. 63; Benton v. State, 124 Neb. 485, 247 N. W. 21.

We do not find that the alleged defect in the information was called to the attention of the trial court in the motion for new trial, but it was first assigned as error in the 56th paragraph of the petition in error. This

court has held that an information first questioned on appeal must be held sufficient unless it is so defective that by no construction can it be said to charge the offense for which the accused was convicted. See Hunt v. State, 143 Neb. 871, 11 N. W. 2d 533.

The defendant charged, as his next assignment of error, misconduct of the county attorney in offering in evidence exhibit No. 8, being a sheet of paper containing a certificate of analysis, the one line of which read: "Blood Alcohol_____0.79 milligrams per cc. (0.08 per cent)." It appears that shortly after defendant's arrest Dr. John A. Rosenau took a specimen of blood from defendant's ear at about 5:15 of the afternoon of the accident, and it was sent to Lincoln for analysis.

This sheet of paper, exhibit No. 8, was offered in evidence and objection was made that defendant was deprived of opportunity of cross-examining the man who made the report, and that it was incompetent, irrelevant and immaterial. The objection was sustained.

Then, in the judge's chambers, outside the presence of the jury, the county attorney was sworn and examined by defendant's attorney. Such record constitutes some 14 pages of the bill of exceptions. Briefly, the defendant based his motion for a mistrial on the ground that the county attorney offered exhibit No. 8 in evidence when he knew at the time that he did not have the evidence of the chemist who made the analysis of the blood; and also because the county attorney remarked in the presence of the jury that the defendant could waive the objection. The defendant insists that no admonition of the court will cure this prejudice and error. In the evidence the county attorney testified: "The reason I offered this exhibit in evidence was that Mr. Mothersead in his opening statement to the jury said that we had in our possession evidence with respect to a blood test that had been taken of the defendant Ivan Anderson, and that we would not offer it in evidence, * * * feeling

that if Mr. Mothersead would desire to accept it that he could do so, and for no other reason."

Prior to the offer of this exhibit No. 8, on the cross-examination of Sgt. Leo Knudtson, who had taken the defendant to the hospital right after the accident, these questions and answers appear: "Q- Then you saw Dr. Rosenau? A- Yes, that's right. Q- That was after you had given the whiskey bottle, so-called, to Steve Warrick? A- Yes, sir. Q- And you requested Dr. Rosenau to take a specimen of Ivan Anderson's blood? A- Yes. * * * Q- You were having this blood test sample taken so that you could have it tested for alcoholic content? A- That was the idea, yes. Q- Then when did you get the sample? A- Tuesday following the accident. * * * Q- And you got one of these paste board packing tubes? A- A round paste board packing tube, right. * * * Q- You mailed it to a laboratory in Lincoln? A- Yes, sir. Q- You got a report back? A- Yes, sir. Q- From that laboratory as to the results of the test? A- Yes, sir. Q- Did you give that report to the county attorney? A- Yes, sir."

Defendant cites the general annotation in 109 A. L. R. 1089, on offering improper evidence as ground of new trial. He also cites Wilson v. State, 87 Neb. 638, 128 N. W. 38, a homicide case, where the county attorney had defendant's wife sit in the courtroom and witnesses point to her as his wife, although she could not have been used as a witness against him. There were many serious errors that occurred in the trial and a reversal followed. We cannot see that it supports the defendant.

However, in the case at bar we feel that an answer to a somewhat similar situation may be found in Lee v. State, 124 Neb. 165, 245 N. W. 445. It was said in that case that remarks made by the county attorney, which were brought about and made in answer to argument by the prisoner's attorney, unless necessarily prejudicial, do not necessitate a reversal.

There was nothing about the offer of this sheet of

paper, exhibit No. 8, which would inflame the passions or arouse the prejudices of the jury. The objection to the offer was sustained by the court, and, further, the court covered the entire situation in instruction No. 12, which read as 'follows: "The jury are instructed that they have been admonished by the Court to disregard in its entirety the offer on the part of the State of Nebraska of Exhibit No. 8, and were further admonished to disregard any remarks of counsel made with reference thereto. Evidence has been offered in this case to the effect that said Exhibit pertained to a specimen of the blood of the defendant, Ivan Anderson, procured at the suggestion of the State Highway Patrol at a time when the defendant, Ivan Anderson, was in the hospital, without his knowledge or consent, and at a time when he was apparently unconscious. The jury are further instructed that the procuring of such a blood specimen under such circumstances constituted a violation of the person of the defendant and legally constituted an assault upon the body and person of the said Ivan Anderson, and the jury are entitled to take this into consideration in connection with all of the other evidence offered in this case in determining whether or not the defendant is guilty of the charge contained in the information filed herein."

We cannot find that the defendant was in any way prejudiced by the offer of exhibit No. 8, under the facts shown in the record and the instruction given by the court.

The defendant alleged that there was no proof of the death of Virginia Buechler. We have heretofore set out the testimony of Dr. Riddell as to his treatment of her at the hospital from 5 p. m., May 18, until her death on May 21, at 10:15, from a compound fracture of the skull. He testified that he had never met her before the afternoon of the accident; and that he would estimate her age at about 24 years. He had a neurological surgeon from Denver come as a consultant. He kept full records

on the chart of her case. We are not cited to any rule of evidence that, where a patient is brought in unconscious from an accident, a surgeon must have met the patient formally before he can testify who the patient was he treated and that the patient died.

The next assignment of error argued by defendant is that the county attorney was allowed to ask him about his activities the day previous, and also about the mechanism of his car, and to call a witness on rebuttal who contradicted and impeached some of his testimony. It is an elementary rule of criminal law that evidence to rebut or disprove statements made on direct examination of defendant as to material facts may be offered and received in evidence. See Brown v. State, 125 Neb. 287, 250 N. W. 67.

The defendant charged that the court erred in not striking out the testimony of a witness who refreshed his recollection from notes made by another. It appears from the bill of exceptions that S. K. Warrick, Jr., deputy sheriff, and W. H. Kirwin, deputy county attorney, went to the hospital the day following the accident, had a talk with the defendant, and that Mr. Kirwin made some notes of this conversation at the time, which notes Mr. Warrick saw at some time later. There is no claim that the deputy sheriff had Kirwin's notes while he was testifying, but simply that he saw them once after they were written. On cross-examination, Mr. Warrick testified: "Q- You are really testifying from Mr. Kirwin's notes, aren't you, Mr. Warrick? A- I am testifying from my memory. They might have been a refresher when I looked at the notes. Q- That is, you might have refreshed your memory when you looked at Mr. Kirwin's notes? A- Yes. Q- You would not pretend to remember all you have testified to without Mr. Kirwin's notes? A- I wouldn't say. I can remember quite well in those kind of conversations."

The defendant offered instruction No. 16, the last sentence reading as follows: "You are instructed that the

witness has no right to refresh his recollections by reading notes made by other persons, and unless you can determine as to what facts the witness, Warrick, testified from his own recollections without having the same refreshed by reading the notes made by another person, then you must disregard his entire testimony as to such conversation." This instruction was refused by the court.

A witness may be permitted, for the purpose of refreshing his memory, to use a memorandum or writing, made at the time by himself or another, where he knows it to be correct. See, City of Kearney v. Themanson, 48 Neb. 74, 66 N. W. 996; Atchison, T. & S. F. R. R. Co. v. Lawler, 40 Neb. 356, 58 N. W. 968.

The extensive annotation in 125 A. L. R. 19 covers all phases of the use of such memoranda, but in this case two men examined a defendant, one made the notes, the other read such notes but did not see them again or have them in court, and testified clearly from memory as to the conversation. We see nothing prejudicial to defendant in this occurrence, and defendant's instruction No. 16 was properly refused.

We conclude from the evidence hereinbefore set out that the defendant was engaged in the commission of an unlawful act which directly and proximately caused the death of Virginia Beuchler, as charged in the information, and that this amply supports the verdict of the jury.

It is charged by the defendant that the sentence of five years for the death of this young woman is excessive, and we are cited to several manslaughter cases where the sentence pronounced was less than in the instant case. We are urged to reduce the sentence under the power granted this court in section 29-2308, R. S. 1943. This section reads as follows: "In all criminal cases that now are, or may hereafter be pending in the Supreme Court on error, the court may reduce the sentence rendered by the district court against the accused, when in its opinion the sentence is excessive, * * *. No judgment shall be set aside, or new trial granted, or judgment

rendered in any criminal case, on the grounds of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, if the Supreme Court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred."

"This court will not interfere with a verdict of guilty in a criminal case which is based upon conflicting evidence unless it is so lacking in probative force that we can say as a matter of law that it is insufficient to support a finding of guilt beyond a reasonable doubt." Haffke v. State, 149 Neb. 83, 30 N. W. 2d 462. See, also, Severin v. State, 146 Neb. 506, 20 N. W. 2d 377.

This sentence of five years was fixed by the trial court, who saw the defendant and other witnesses and heard their testimony, and we do not believe the sentence was excessive. We have examined all assignments of error argued in the defendant's brief and find no prejudicial error in the record.

AFFIRMED.