FLOYD L. COWAN v. STATE OF NEBRASKA.
2 N. W. (2d) 111
FILED JANUARY 30, 1942. No. 31173.

*Eugene D. O'Sullivan, William P. Welch* and *Marjorie E. Welch,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Rush C. Clarke, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

Plaintiff in error was convicted of the crime of manslaughter and sentenced to serve one year in the penitentiary.

The information charged the crime in the following language: "That the Floyd L. Cowan, then and there being, then and there on or about the 23d day of April, 1940, in said city, county and state, then and there being, did then and there one Ralph W. Sandell, then and there being, unlawfully and feloniously kill and slay." It is contended that this information is insufficient to sustain a conviction, for the reason that it does not apprise the accused of the nature and cause of the charge against him, and is therefore violative of sections 3, 10, 11, article I of the Constitution of the state of Nebraska.

The information was drawn in accordance with the provisions of section 29-1512, Comp. St. 1929, which provides: "In any indictment for manslaughter, it shall not be necessary to set forth the manner in which, or the means by which, the death was caused; but it shall be sufficient to charge that the defendant did unlawfully kill and slay the deceased." The question is whether the information in the case at bar, charging the crime in accordance with and in the language of this statute, is sufficient to sustain the conviction. It is a question which does not appear to have been passed on previously by this court.

Constitutional provisions require that a defendant be convicted by due process of law, that he be charged in writing either by indictment or information, and that the accused shall have the right to demand the nature and cause of accusation and to have a copy thereof. This does not mean that detailed particulars of the crime must be stated in the information or indictment in the meticulous manner prescribed by the common law. The trend is in the direction of simplification of statement and the elimination of technical formalities. A proper administration of justice does not require our adherence to outmoded methods or the retention of legal fictions and absurdities. The legislature has the power to determine what constitutes a crime, and when it has performed this function it may likewise determine within constitutional limits what information must be included in the written charge to sufficiently advise the accused of the nature of the offense for which he must answer. Due process of law requires only that the accused be given sufficient notice of the nature of the charge against him in order that he may prepare a defense and plead the judgment as a bar to any subsequent prosecution for the same offense. The information in the instant case charges that on or about the 23d day of April, 1940, Floyd L. Cowan, in the county of Douglas and state of Nebraska, did then and there one Ralph W. Sandell unlawfully and feloniously kill and slay. Any person with a reasonable amount of intelligence would have no difficulty in knowing the nature and

cause of the accusation against him. There is no sound argument against a simple and plain statement of the charge. Justice ought not to be sacrificed on the altar of formalism. While we are not willing to say, before the precise question is presented, that the simple words "A unlawfully killed B" are sufficient to charge the crime of manslaughter (see American Law Institute Code of Criminal Procedure, sec. 188), yet we are likewise unwilling to condemn it at this time, for the reason that natural progress under modern conditions may cause us to revise any views we may now have. The worship of form in charging a crime is fast giving way to considerations of content. Prolixity of language is likewise giving way to simplicity and terseness of statement. We do not intend to hamper this trend so long as constitutional requirements are met. See *Nichols v. State*, 109 Neb. 335, 191 N. W. 333.

We have come to the conclusion that an indictment or information meets all constitutional requirements (1) if it shows that the acts which defendant is charged with committing amounted to a crime which the court had power to punish, and that it was committed within the territorial jurisdiction of the court, (2) if it informs the defendant of the nature of the charge against him, and (3) if it constitutes a record from which it can be determined whether a subsequent proceeding is barred by the former adjudication. And to the third requirement, it cannot be said that the indictment or information alone must be full protection against double jeopardy, for the reason that in many cases, such as where several acts constitute a single crime, the defendant is often required to allege facts outside the record to support his plea of former adjudication. If the information or indictment apprises the defendant with reasonable certainty of the accusation against him so that he may prepare his defense and plead the judgment as a bar to a subsequent prosecution for the same offense, it meets the fundamental purposes of an information or indictment, as well as constitutional requirements. *Bergemann v. Backer*, 157 U. S. 655, 15 S. Ct. 727;

*Bartell v. United States*, 227 U. S. 427, 33 S. Ct. 383; *People v. Bogdanoff*, 254 N. Y. 16, 171 N. E. 890; *Commonwealth v. Jordan*, 207 Mass. 259, 93 N. E. 809.

We think the information filed in the instant case meets all the requirements of a valid charge, and that the enactment of the statute authorizing the form of information used was a proper exercise of legislative power.

The record in this case shows that on April 23, 1940, at approximately 6:30 p. m., plaintiff in error was proceeding north out of Omaha on North River Drive. North River Drive is a paved street about 30 feet in width. It is crossed by railroad tracks at a point a short distance south of the point where the accident occurred. As plaintiff in error came over the crest of the hill some 700 feet south of the railroad tracks, the deceased, Ralph W. Sandell, was proceeding north on a pair of roller skates on the east half of the paving. About 50 feet north of the tracks there was a patch in the paving 25 feet long and 11 feet wide where the pavement had been taken out and later filled in and surfaced with cinders and broken stone. The evidence, including the pictures in the record, show that traffic had been moving across the patch in complete safety, although it appears that it would be difficult to cross on roller skates. The patch extended into the east half of the pavement to a point about four feet from the white center line of the street.

Two eyewitnesses testified that Sandell skated across the tracks and proceeded north on his right-hand side. As he approached the patch, he turned to the left, went around the patch and resumed his position in the center of the east half of the street. About 75 feet north of the patch he was struck by plaintiff in error's car. The eyewitnesses estimate the speed of the car at 60 miles an hour and describe the accident about as follows: Sandell was struck by the left front headlight and fender of the car, thrown ten feet in the air by the impact, struck and depressed the hood of the car when he came down, crashed into the windshield, slid up over the front of the top and dropped to

the pavement about 105 feet from the point of contact. The evidence of one of the eyewitnesses is that the car traveled another 120 feet after Sandell dropped to the pavement, that plaintiff in error opened the door and looked back, closed the door and started on and was stopped by the witness and escorted back to the scene of the accident.

Plaintiff in error says he came over the crest of the hill at a speed of 25 or 30 miles an hour and saw the boy all the time from that point on. He says he turned out for the patch in the pavement and returned immediately to the center of the right-hand lane. He says that Sandell was skating in the left-hand lane facing traffic and that Sandell darted to the right-hand side of the street unexpectedly, and that he was unable to avoid the accident. He denies that he intended to leave the scene of the accident and says that he was merely driving to a point where he could turn his car and return to the scene of the accident when he was intercepted and escorted back by the witness Anderson.

Plaintiff in error admits drinking a pint bottle of beer about 3 :30 p. m. of the day of the accident and another about 6 p. m. of said day. Witnesses, including the police officers who arrived at the scene of the accident shortly after it occurred, testified that he was unsteady on his feet and that he was unable to walk straight. Plaintiff in error attributed this condition to nervous shock and a previously existing heart condition which he was unable to corroborate. The policemen testified that plaintiff in error said immediately following the accident that the boy darted in front of him on a bicycle from a side street. There was no side street at the scene of the accident and it is admitted that Sandell was traveling on roller skates. On another occasion plaintiff in error told the police that he never saw Sandell at all and did not know where he came from.

We think this evidence is amply sufficient to sustain a conviction for manslaughter. The testimony of two eyewitnesses and the mute evidence of every circumstantial fact lead to the conclusion that the car was being driven

at a high rate of speed. There is ample evidence in the record from which the jury could well conclude that too much beer or other intoxicating liquor played its part in causing the death of this 17-year-old boy. The conflicting statements made by plaintiff in error soon after the accident are ample justification for the jury to disregard his testimony tending to support his claim of innocence. Our conclusion is that the evidence is sufficient to sustain the finding of the jury that plaintiff in error was guilty of such gross negligence as to indicate a wanton disregard of human life. Such negligence is criminal in its character, and where it results in a death will sustain a conviction for manslaughter.

AFFIRMED.