HAROLD PUCKETT, PLAINTIFF IN ERROR, v. STATE OF NEBRASKA, DEFENDANT IN ERROR.

15 N. W. 2d 63

FILED JUNE 23, 1944. No. 31742.

*J. E. Willits,* for plaintiff in error.

*Walter R. Johnson, Attorney General, H. Emerson Kokjer* and *Rush C. Clarke, contra.*

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

CHAPPELL, J.

Plaintiff in error, hereinafter called defendant, was found guilty of manslaughter by a jury in the district court for Adams county, Nebraska. He was sentenced to serve one year in the Nebraska state penitentiary, and prosecutes error to this court. His assignments are that the trial court erred in sustaining the sufficiency of the information, and in refusing and giving certain instructions to the jury. He also contends that the evidence is insufficient to sustain his conviction.

The applicable definition of manslaughter is found in section 28-403, Comp. St. 1929, which provides: "Whoever shall unlawfully kill another * * * unintentionally, while the slayer is in the commission of some unlawful act, shall be deemed guilty of manslaughter; and, upon conviction thereof, shall be imprisoned in the penitentiary not more than ten years nor less than one year."

The information, drawn in the language of the statute, Comp. St. 1929, sec. 29-1512, charged: "that Harold Puckett late of the county aforesaid, on or about the 7th day of August, A. D. 1943, in the County of Adams, and State of Nebraska aforesaid, then and there being, did then and there unlawfully and feloniously kill and slay one Carol Ann Wendt, thereby committing the crime of manslaughter."

Defendant's primary contentions concerning the insufficiency of the information, including the constitutional questions argued in the brief and before this court, are answered adversely to him in *Cowan v. State,* 140 Neb. 837, 2 N. W. 2d 111. The information in that case was almost identical with the one here involved. Therein the court held that, "The statute prescribing a short form informa-

tion for charging the crime of manslaughter (Comp. St. 1929, sec. 29-1512) *held* constitutional, and an information drawn in the language of such statute *held* sufficient to properly charge the crime of manslaughter." However, in the *Cowan* case the defendant was in fact the principal, and defendant here contends that the information was insufficient because at most he was an aider, abettor, or procurer, but was not charged as such. Section 28-201, Comp. St. 1929, provides that, "Whoever aids, abets or procures another to commit any offense may be prosecuted and punished as if he were the principal offender." In construing this statute the court held in *Scharman v. State*, 115 Neb. 109, 211 N. W. 613, "That the same rule as to the information, conduct of the case, and punishment, heretofore applicable to a principal, should thereafter govern his aider, abettor, or procurer, and that no additional facts need be alleged in an information against such accessory before the fact than are required against his principal." See, also, *In re Resler*, 115 Neb. 335, 212 N. W. 765; *State v. Girt*, 115 Neb. 833, 215 N. W. 125. In any event, the evidence in this record amply supports the proposition that defendant was in fact a principal, present and acting in concert with the driver of the car involved at all times, which brings him within the rule that any person who is present at the place of the crime, aiding and assisting in the commission thereof is in fact a principal and may be prosecuted as such. *Hill v. State*, 42 Neb. 503, 60 N. W. 116; *Dixon v. State*, 46 Neb. 298, 64 N. W. 961; *Clernt v. State*, 109 Neb. 628, 192 N. W. 209.

It is now well established that a person may be an aider, abettor, or procurer in involuntary manslaughter because of a common purpose to participate in unlawful acts, the natural and proximate result of which is to kill another, but when persons are present aiding and assisting each other in the commission of unlawful acts which proximately result in the death of another all such persons are in fact principals. *Wade v. State*, 174 Tenn. 248, 124 S. W. 2d 710; *Black v. State*, 103 Ohio St. 434, 133 N. E. 795. Thus view-

ing the matter we conclude that the information was sufficient to charge defendant with the crime of manslaughter whether he was in fact a principal, or an aider, abettor, or procurer subject to prosecution and punishment as if he were a principal.

We have examined the instructions given to the jury and find no error therein in any manner prejudicial to defendant. Furthermore, all the instructions requested by defendant either appear in substance in other instructions given or were properly refused by the trial court. They speak for themselves and we do not believe it necessary to discuss them in this opinion.

In *Benton v. State*, 124 Neb. 485, 247 N. W. 21, this court held that, "When one drives an automobile in violation of law pertaining to the operation of such vehicles on the public highway and in so doing, as a result of the violation of law causes death to another, he is guilty of manslaughter." See, also, *Schultz v. State*, 89 Neb. 34, 130 N. W. 972; *Crawford v. State*, 116 Neb. 125, 216 N. W. 294; *Cowan v. State*, *supra*; Annotation, 30 A. L. R. 66.

Bearing this in mind, we turn to the question of the sufficiency of the evidence to sustain conviction. The record discloses that early in the afternoon of August 7, 1943, defendant, after drinking a glass of beer, invited two married women, whom he had previously known, to ride with him in his Chevrolet coach from Hastings, Nebraska, to his place of employment to procure his pay check. They accepted his invitation. After receiving the check defendant drove the car east on the highway for some distance where it was stopped and each drank a bottle of coca cola "spiked" with whisky from defendant's bottle which was in his car. One of the women then drove the car from that point to Harvard, Nebraska. There they visited a beer tavern where each drank two bottles of beer and defendant purchased six bottles to take in the car with them. At about 5 p. m. defendant went to the car and drank the small amount of whisky remaining in his bottle, after which they started their return to Hastings. Defendant drove out of Harvard

to the highway where they stopped and the second woman took the wheel. She had no driver's license and it is doubtful whether she had ever driven a car before. Nevertheless with this knowledge defendant, sitting between the two women, volunteered or undertook to teach the operator how to drive. He shifted the gears and kept his foot upon and operated the accelerator at all times thereafter. In these positions they started the car and drove west on the highway at a fast rate of speed while defendant pursued an amorous adventure with the driver, which, because of its character, we will not describe. They crossed a railroad track where the car striking a bump swerved sharply and widely, whereupon defendant took the wheel, straightened its course, and again released the wheel to the driver. They proceeded westward along a perfectly level paved highway and defendant again pursued his adventure with the woman driver, whereupon she took her hands from the wheel to defend herself, and the car, traveling at from 40 to 50 miles an hour, swerved to the extreme north off the paved portion of the highway. Defendant grasped the wheel. Thenceforth with wheels screeching, women occupants screaming, the car swerved back to the middle, then to the north almost to the ditch, and turning at increased speed lurched to the south across the pavement and crashed into a Model A Ford coach driven from the west on its own side of the highway at a low rate of speed. A farmer, his wife and four small children were riding in the Ford. The father was driving; his wife sat next to him; and their three older children were in the back seat. The fourth child, Carol Ann Wendt, 15 months old, riding on the mother's lap, asleep, with her head toward the door, was thrown from the car and critically injured. She was taken immediately to a hospital but upon arrival it was found that she was dead. Others in both cars, including the defendant, were more or less seriously injured. After the crash defendant's breath indicated the presence, and his conduct the influence, of intoxicating liquor. He took the witness stand in his own behalf, but his testimony does not differ greatly

in important respects from the evidence adduced by the many witnesses for the state.

We can only decide that the evidence is amply sufficient to sustain a finding of the jury that the car was driven in such a grossly negligent and unlawful manner as to be criminal in character, which, having resulted in death to another, will sustain defendant's conviction. We find no error in the record prejudicial to the defendant, and the judgment of the district court is affirmed.

AFFIRMED.