**Michael NEAL, Petitioner,**

v.

**Gary GRAMMER, Respondent.**

**No. CV89–L–549.**

United States District Court,
D. Nebraska.

May 23, 1991.

J. Michael Coffey (court-appointed), Omaha, Neb., for petitioner.

Robert M. Spire, Atty. Gen., and Terry P. Schaaf, Sp. Asst. Atty. Gen., Lincoln, Neb., for respondent.

## MEMORANDUM ON PETITION FOR WRIT OF HABEAS CORPUS

URBOM, Senior District Judge.

Michael Neal, an inmate at the Nebraska State Penitentiary, has submitted a petition for writ of habeas corpus under 28 U.S.C. § 2254. Magistrate Judge David L. Piester has recommended that the petition be denied. I agree that it must be.

I have studied the entire file, consisting of records of proceedings before the District Court of Douglas County, Nebraska, and the Supreme Court of Nebraska. I also have received letters from Fellowship Community Church of Lincoln, Nebraska; Dorothy Eure, a paralegal at the Legal Aid Society in Omaha; Mark Pomeroy of Lincoln, Nebraska; and Michael E. Neal. Those letters, all recounting confidence in the petitioner, and some reflecting belief of a sincere change of thought patterns and significant growth, are not a part of the court file and are not appropriately considered in any way. I mention them only by way of acknowledgement that I have received them.

My review of the file persuades me that writing extensively would be of no value, because the District Court of Douglas County, Nebraska, the Supreme Court of Nebraska and the United States Magistrate Judge have carefully analyzed and fully examined and written about the facts of the case. The report and recommendation of the magistrate judge is detailed, examining each issue carefully and thoughtfully. I now adopt it.

## REPORT AND RECOMMENDATION

DAVID L. PIESTER, United States Magistrate Judge.

Pending before the court is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, filed by Michael Neal, an inmate at the Nebraska State Penitentiary. The parties have submitted the state court records and their respective briefs on the merits of petitioner's claims, and the matter is now ripe for review.

The petitioner was convicted in the District Court of Douglas County, Nebraska, following entry of a guilty plea to one count of robbery, of a "Town & Country" store, and one count of use of a firearm to commit a felony. He was sentenced to consecutive terms in the Nebraska Penal and Correctional Complex of not less than 14 years nor more than 50 years on the robbery count and not less than 5 years nor more than 20 years on the use of a firearm charge. Petitioner filed an appeal to the Nebraska Supreme Court which affirmed his conviction and sentence. *State v. Neal*, 216 Neb. 709, 346 N.W.2d 218 (1984).

While the appeal was pending, petitioner, through new counsel, filed a "Motion For New Trial And Leave To Withdraw Plea" in the district court. That motion was amended and became an "Amended Motion For New Trial And Petition For Postconviction Relief And For Writ Of Error Coram Nobis." The district court set that motion for an evidentiary hearing, which commenced on August 23, 1983, at which time petitioner's counsel withdrew the "postconviction" portion of the motion and the hearing proceeded on the motion for a new trial and for a Writ of Error Coram Nobis. Evidence was received and testimony was taken from the petitioner, a co-defendant, Walter Bray, and petitioner's trial counsel, Michael Gutowski. On September 13, 1983 the district court entered an order denying the petitioner's motion for lack of jurisdiction based on its finding that petitioner's direct appeal was still pending in the Nebraska Supreme Court. The petitioner then appealed that judgment of the district court to the Nebraska Supreme Court, with that court ultimately granting the appel-

lee's motion for summary dismissal pursuant to the court's Rule 7 B(1). *State v. Neal*, 216 Neb. xxv (1984).

Subsequent to the affirmance of petitioner's direct appeal on the "Town & Country" robbery, a motion for post-conviction relief was filed in the district court. Petitioner's motion raised two grounds for relief—ineffective assistance of counsel, and a concomitant challenge to the voluntariness of his guilty plea, and denial of the right to counsel of his choice. The court denied the request for an evidentiary hearing and relied upon the court's records from petitioner's August 23, 1983 hearing on the coram nobis writ. The district court denied relief, and on appeal the Nebraska Supreme Court affirmed. *State v. Neal*, 231 Neb. 415, 436 N.W.2d 514 (1989).

In addition to the conviction for the "Town & Country" robbery in 1982, the petitioner was also convicted in two separate jury trials on two other robbery charges, one stemming from the robbery of an "Empire Cleaners" establishment on March 30, 1982, and the other from the robbery of a "Dividend Gas Station" on March 8, 1982. Prior to his sentencing for the "Town & Country" robbery discussed above, petitioner had been sentenced by the District Court of Douglas County to a term of not less than seven years nor more than ten years for the "Dividend Gas" robbery, and received a term of not less than three years nor more than five years for the "Empire Cleaners" robbery. Although this court does not have the benefit of the state court records from the sentencings on these convictions, the Nebraska Supreme Court stated in its opinion on the "Town & Country" direct appeal that "[t]he sentences for the two previous convictions were consecutive." *State v. Neal*, 216 Neb. at 713, 346 N.W.2d 218. At the time of sentencing for the "Town & Country" robbery the district court ordered that petitioner's consecutive sentences for the robbery and firearm convictions were to be served "consecutively to each sentence previously imposed on you by the District

Court of Douglas County, Nebraska in Docket 112, Number 277 and Docket 112, Number 291 [the "Empire Cleaners" and "Dividend Gas" convictions]. (See Filing # 11, September 9 and 22, 1982 BE–35:23–25, 36:1–2).

In this habeas proceeding the petition raises these grounds for relief:

(1) Petitioner's guilty plea was not voluntarily and intelligently entered in that the plea was "equivocal," and, in addition, there was an insufficient factual basis upon which to base the plea;

(2) The sentences imposed upon the petitioner, having been ordered to be served consecutively, constitute cruel and unusual punishment in violation of the Eighth Amendment;

(3) The petitioner was denied his right to "counsel of his own choosing," (Filing # 1, at ¶ XI(g)); and

(4) Petitioner was denied effective assistance of counsel "by reason of his appointed counsel's failure to interview Walter Bray, a material witness whose testimony could have exonerated him." (Filing # 1, at ¶ XI(h)).

■ At this juncture I note that the petitioner's brief attempts to raise claims which were not included in his petition filed in this court. Specifically, the brief attempts to raise claims challenging his conviction on the "Dividend Gas" robbery without having made reference in his petition to those claims or that conviction.[1] It is not the brief which controls the issues which may be raised in this action. The petition governs the claims which this court will address, and as such, I shall address only those claims set forth above which relate to the "Town & Country" robbery convictions and sentences.

## EXHAUSTION AND WAIVER

■ The respondent asserts that the petitioner has failed to meet the exhaustion requirements of 28 U.S.C. § 2254(b) as to his claims of ineffective assistance of coun-

1. I also note that none of the state court records relating to the "Dividend Gas" robbery were submitted to the court for review. The records submitted relate solely to the "Town & Country" robbery and firearm charges.

sel and the voluntariness of his plea. On the contrary, the petitioner raised the voluntariness issue in his direct appeal, and raised that issue in conjunction with his ineffective assistance claim (on the specific grounds alleged here) in his state post-conviction action. The state court records also show that petitioner has raised all of the additional claims to be addressed in this action in the state supreme court. I therefore conclude that petitioner has exhausted his state court remedies on the claims presented here, and this court may review those claims on their merits.

### VOLUNTARINESS OF PLEA

■ Petitioner's claim alleging that his plea of guilty was not voluntarily and intelligently entered is based on assertions that he did not understand the nature of the proceedings, suffered from "nervous anxiety," and lacked the "mental capacity to plead to the charges." (Filing # 1, at ¶ VI). These assertions are, however, contrary to the answers given to the trial court at the time of his plea taking. A defendant's "representations at a plea-taking carry a strong degree of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Ingrassia v. Armontrout,* 902 F.2d 1368, 1370 (8th Cir.1990) (quoting, *Voytik v. United States,* 778 F.2d 1306, 1308 (8th Cir.1985)). The law in this circuit is well established that a voluntary plea of guilty has the effect of waiving all nonjurisdictional defenses to a criminal charge. *See, e.g., Johnson v. Petrovsky,* 626 F.2d 72, 73 (8th Cir.1980); *United States v. Petrangelo,* 599 F.2d 261, 262 (8th Cir.1979).

■ Nonetheless, a plea may still be found to have been involuntary if a petitioner can show that the plea was a result of ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985); *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1975). Here the petitioner does allege that his court-appointed trial counsel was ineffective for his failure to interview a material witness, Walter Bray, and thus discover evidence which would have "exonerated" the petitioner. There-

fore, petitioner's challenge to the voluntariness of his guilty pleas is dependent upon his success on the claim of ineffective assistance of trial counsel.

### INEFFECTIVE ASSISTANCE OF COUNSEL

■ Claims of ineffective assistance of counsel are governed by the standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on an ineffective assistance of counsel claim under *Strickland,* a petitioner must show "(1) that his attorney's actions were unreasonable when viewed in the totality of the circumstances; and (2) that he was prejudiced because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different." *Lawrence v. Lockhart,* 767 F.2d 449, 450 (8th Cir.1985). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Further, in order to establish prejudice in the present context, the petitioner must demonstrate that, but for trial counsel's error, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. *See Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

■ Petitioner contends that his trial counsel failed to adequately investigate his case prior to the guilty plea and sentencing hearings. Conclusional allegations of counsel's failure to properly investigate, however, are insufficient to support a claim for habeas relief. *Smith v. United States,* 635 F.2d 693, 698 (8th Cir.1980), *cert. denied,* 450 U.S. 934, 101 S.Ct. 1397, 67 L.Ed.2d 368 (1981). In order to establish a claim, the defendant must demonstrate what evidence his trial counsel could have discovered that would have helped his defense. *See Beans v. Black,* 757 F.2d 933 (8th Cir.1985), *cert. denied,* 474 U.S. 979, 106 S.Ct. 381, 88 L.Ed.2d 334 (1986); *Johnson v. Mabry,* 752 F.2d 313, 315–16 (8th Cir.1985).

■ As noted above, the only basis raised in support of his claim of ineffective

assistance of counsel is that his trial counsel failed to interview petitioner's co-defendant, Walter Bray, and thus failed to discover that Bray would have testified at trial that the petitioner had merely gone into the Town & Country market on the night of the robbery to get a sandwich, that Neal was unaware of his co-defendants' intentions to rob the store, and that when the co-defendants entered, one of whom held a gun, Neal ran from the store and did not leave in the vehicle with Bray and his companions.

In order to succeed on this claim petitioner must first show that the actions of trial counsel were unreasonable under the totality of the circumstances. Upon review of the facts set forth in the state court records I conclude that the petitioner has made no such showing. The testimony offered at the August 23rd and 25th, 1983 hearing on the writ of error coram nobis indicates that petitioner's trial counsel originally represented not only the petitioner but also Walter Bray and Leroy Brooks, co-defendants in the "Town & Country" robbery. (BE–65:21–25). Trial counsel recalled speaking with Bray at that time, but did not recall speaking with him about Bray's statements contained in the police reports. (66:16–19). After Bray received separate counsel, petitioner's counsel attempted to contact Bray through his attorney, but Bray refused to speak with him while charges were pending against him. (65:3–18). As noted by the Nebraska Supreme Court, once Bray obtained separate counsel, Nebraska's Code of Professional Responsibility required that trial counsel make contact with Bray only through his court-appointed attorney. *State v. Neal*, 231 Neb. at 418, 436 N.W.2d 514, citing Canon 7, DR 7–104, of the Code of Professional Responsibility. Walter Bray also testified at the August 23rd hearing and did not contradict trial counsel's version of these events.

Trial counsel knew from the police reports relating to the "Town & Country" robbery, as well as the court records relating to Bray's guilty plea, that Bray had made a statement to police which essentially stated that the petitioner was not involved in the planning or perpetration of the "Town & Country" robbery. (85:20–25, 86:1–7). For that reason trial counsel issued a subpoena to obtain Bray's presence at petitioner's trial, (65:16–18, 80:9–25, 81:1–8), and intended to interview Bray in preparation for that testimony. (81:6–8). Indeed, it appears that the only portion of Bray's alleged testimony of which trial counsel was unaware was the statement that on the night of the "Town & Country" robbery the petitioner did not leave the store with his co-defendants, but rather ran outside and hitchhiked home with a passerby. (74:12–20). Trial counsel testified that even if he had known that Bray intended to make that statement at trial, it would not have changed his opinion offered to his client that "conviction was highly likely." (79:1, 78:14–25, 79:1).

According to the testimony, trial counsel's opinion on petitioner's chances for acquittal was based upon his assessment of the credibility of the defense which the petitioner intended to assert at trial. Petitioner asserted that he had no knowledge of his co-defendants' intentions of robbing the Town & Country store, that he was in the store only to get something to eat, and that while he was there his companions entered the store with a gun and told the clerk he was being held up. The testimony indicates that this same defense had been used by petitioner in his trial on the "Empire Cleaners" robbery; in essence, that he was merely in the establishment to pick up a suit and his companions, the same co-defendants, entered the cleaners, without prior knowledge of the petitioner, to rob the clerk. Petitioner's trial counsel stated that he had filed a motion *in limine* in an attempt to keep out evidence of the other criminal activity and prior statements of the petitioner at his previous "Empire Cleaners" trial which showed that he had used the same defense in that case; however, that motion was denied and the state indicated that they fully intended to use that evidence in the "Town & Country" trial. (60:4–25, 61:1, 78:13–25, 79:1, 88:1–13). It was trial counsel's opinion that

such evidence would "severely dilute the—the defense." (88:12–13).

Petitioner testified at the August 23, 1983 hearing that his trial counsel refused to agree to call any of the witnesses requested by him, including Mr. Bray. That testimony contradicts counsel's testimony and the court record which indicates that counsel subpoenaed all of the witnesses requested by the petitioner, including Bray. (BE–56:13–25, 57:1–25, 58:1–4). The record also indicates that trial counsel was ready to go to trial on September 9, 1982 as scheduled, but it was the petitioner, after the jury had been empaneled, who informed his attorney that he wished to change his plea, forgo a trial, and plead guilty to the both charges. (BE–61:15–22, 62:20–22, 63:3–5 and 22–24, 87:3–5). Petitioner in this action, as well as at the hearing on the writ of error coram nobis, asserts that trial counsel "told him" to plead guilty to the charges, and told him to tell the judge at the taking of the plea that he had gone into the store to distract the clerk in order for his co-defendants to rob the store. This testimony is in conflict with the testimony from counsel who stated that it was petitioner's decision to plead guilty, despite the fact that counsel was ready for trial. Additionally, counsel testified he remembered being questioned by the petitioner, after the court refused petitioner's first effort to enter a plea of guilty, regarding why the court refused to take the plea. Counsel informed him that the court refused the plea because the petitioner was not admitting any involvement in the crime, and they once again discussed the state's theory of the case, specifically that the state would try to show petitioner's involvement with the "distraction" argument. (73:1–18). It was after that conversation that the petitioner again requested that the jury be removed so he could enter a guilty plea, and he then informed the court that he had entered the store to "distract" the clerk. (61:13–22, 63:3–5, 22–24, 72:12–24).

The question of whether a habeas petitioner was afforded effective assistance of counsel is a mixed question of law and fact. *United States v. Auerbach*, 745 F.2d 1157, 1161 n. 3 (8th Cir.1984). Thus the ultimate question of whether the petitioner received effective assistance of counsel is not subject to the "presumption of correctness" found in § 2254(d). *Cf. Cuyler v. Sullivan*, 446 U.S. 335, 342, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980). Even so, however, the underlying "subsidiary factual questions," as well as determinations of credibility, are entitled to § 2254(d)'s presumption of correctness. *Miller v. Fenton*, 474 U.S. 104, 112–14, 106 S.Ct. 445, 450–52, 88 L.Ed.2d 405 (1985); *Marshall v. Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). Thus, it is not the province of this court to assess the credibility of witnesses or resolve conflicts in the evidence. The district court, as well as the Nebraska Supreme Court, implicitly found as fact that trial counsel's version of the above stated events was accurate and rejected the petitioner's contention that counsel forced him to plead guilty and make up the story regarding "distracting" the store clerk. The findings of fact of both the trial court and the state appellate court are binding in this court unless the petitioner can establish that these findings were erroneous or not supported by the record. 28 U.S.C. 2254(d); *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Graham v. Solem*, 728 F.2d 1533 (8th Cir.1984); *cert. denied*, 469 U.S. 842, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984). The petitioner has failed to show that the findings of the state courts are either erroneous or lack fair support in the record.

Despite the assertions of the petitioner, trial counsel's inability to conduct an interview of co-defendant Walter Bray prior to the petitioner entering his guilty plea did not amount to a *failure*, or an unreasonable act or omission, on the part of counsel. If Bray refused to speak with petitioner's counsel he could not force such an interview. Counsel testified that following the subpoena issued by the court to obtain the presence of Bray at trial, he intended to conduct an interview of Bray to prepare him for testimony at petitioner's trial.

Further, counsel testified that he knew prior to trial that Bray intended to offer

exculpatory evidence for the petitioner. The only evidence, as petitioner admits herein, which an earlier interview would have allegedly uncovered would have been Bray's statement that the petitioner did not leave in the "get-a-way" car with his co-defendants. Such evidence, according to counsel, would not have altered his opinion that an acquittal was unlikely in petitioner's case given the damaging evidence the state intended to offer relating to the "Empire Cleaners" robbery.

Applying the *Strickland* standard to these facts, I first conclude that the petitioner has failed to identify any act or omission by trial counsel which was unreasonable or which fell "outside the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. Since trial counsel essentially knew the gist of Bray's testimony, i.e., that the petitioner was not involved in the robbery, it was not unreasonable, especially in light of Bray's refusal, to not interview Bray prior to the entry of petitioner's guilty plea.

Even if I were to accept as true the petitioner's assessment of trial counsel's omission, petitioner has wholly failed to convince this court that counsel's failure created actual prejudice in the present context. The petitioner's prejudice claim is not altogether clear. He appears to be arguing that if he had known for sure that Bray was going to testify as he did at the August 23rd, 1983 hearing, petitioner would not have pleaded guilty on September 9, 1982. First, I note that at the August 23rd hearing the petitioner testified that he assumed that Bray would "tell the truth" at trial, i.e., as the petitioner knew the truth, that petitioner had no prior knowledge of the "Town & Country" robbery, was not part of it, and did not leave with Bray and his companions. This statement from the petitioner contradicts his testimony and assertions that he did not know how Bray would testify. Further, as aptly noted by the Nebraska Supreme Court, it was not Bray alone who knew that the petitioner had not left the store with the other robbers. Obviously the petitioner knew this

fact as well and could have informed his trial counsel of this alleged fact.

I cannot presume that the petitioner is arguing that he did not know, at the time he made the decision to plead, that his trial counsel intended to call Bray during the trial, and had he known that he would never have pleaded guilty. Although petitioner testified that counsel was refusing to call petitioner's requested witnesses, such as Bray, (testimony which conflicts with that of trial counsel), he has nowhere asserted that counsel did not make him aware on the day of trial which witnesses had been subpoenaed or were expected to testify in support of petitioner's defense. Indeed, Bray was the key witness in support of the petitioner's version of events during the "Town & Country" robbery. Petitioner does not challenge trial counsel's testimony that he was prepared to go to trial, and do so with Bray as a witness.

 In short, there is nothing in the record or in any statements of the petitioner which tends to support a necessary finding that had counsel interviewed Bray prior to the guilty plea, the petitioner would have chosen to go to trial. First, trial counsel testified that his opinion as to petitioner's chances for acquittal would have been the same even if he would have been told by Bray that petitioner did not leave the store with him. Second, the petitioner had knowledge of the very information which he alleges that his trial counsel failed to discover, and yet that knowledge was not imparted to counsel and apparently did not alter petitioner's decision to plead guilty.

For the foregoing reasons I conclude that petitioner's claim of ineffective assistance of counsel must fail. Trial counsel's actions were not unreasonable under the totality of the circumstances, and the petitioner has not shown how such a pretrial interview would have altered his decision to plead guilty to the charges against him.

Having failed to establish that his guilty plea was a result of ineffective assistance of counsel, I further conclude that petitioner's challenge to the voluntary and intelligent nature of his pleas must fail as well. The record shows that the petitioner volun-

tarily and intelligently waived all of his constitutional rights in a criminal proceeding, and his assertions that he was unaware of the nature of the proceedings are in direct conflict with his declarations to the court at the time of his plea.

### Insufficient Factual Basis

Included in his involuntary plea claim the petitioner has alleged that there was an insufficient factual basis upon which the court could rely in accepting the petitioner's plea. For the following reasons I find this claim to be without merit.

■ At the time the trial court held its hearing on the petitioner's guilty plea the petitioner admitted that he, along with Leroy Brooks, Walter Bray, and another unnamed individual, had stopped at the "Town & Country" store in the early morning hours of March 30, 1982 after returning from a party they had attended. Petitioner explained to the trial judge that he had requested that the driver stop at the store so petitioner could get a sandwich. Petitioner admitted that he entered the store first, chose a sandwich, and was talking to the store clerk at the time that Bray and Brooks entered the store with a gun drawn. In his first discussion with the judge, petitioner continued to deny prior knowledge of the robbery and stated that he merely was in the store for food when his companions entered, at which time he ran from the store and left on foot.

Despite his insistence that he had nothing to do with the robbery he told the judge that he wanted to plead guilty. The judge informed the petitioner that he would not accept his guilty plea based on what the petitioner had said. After reading aloud the information charging the petitioner, the court engaged in the following exchange with the petitioner:

The Court: Do you understand the various elements that the State would have to prove beyond a reasonable doubt in order to convict you of Count I, robbery?

The Defendant: Yeah.

The Court: Did you commit this offense, sir?

The Defendant: Yeah.

The Court: Tell me what you did.

The Defendant: Well, I went in there to order a sandwich and then two other guys had come in. They say Walter Bray is the one that had the gun but he's not; it was the other dude that had the gun. And when I seen them pull out the gun I ran out of the store.

[Defense Counsel]: Did you go in there with them?

The Defendant: I was there—I went there with them. We was coming back from a party in Council Bluffs. But I told them I want to stop and get me a sandwich. It was about 12 or 1 o'clock in the nighttime. So I went in the store. I went in the store by myself and I asked the man did he—and I was actually—I wanted to put sandwich in one of them Easy-Bake ovens and when I was getting about ready to do that then they came in there with a gun and that's when I ran out of the store and got me a ride home.

[Defense Counsel]: Did you ride home with them afterwards?

The Defendant: No, I didn't ride home with them.

The Court: Based on that, Mr. Neal, I can't accept your guilty plea. We will proceed. I'm going to reinstate the plea of not guilty on each charge and we will proceed.

[Defense Counsel]: Didn't you understand what I—you know, he can't— you're saying you weren't part of the robbery at all. He can't accept the guilty plea under those circumstances.

The Defendant: Well, I just,—I want to plead guilty.

The Court: I won't accept it, not unless you tell me that you were involved in that robbery.

The Defendant: Then I was involved in it.

The Court: Then tell me what happened, sir. What did you do?

The Defendant: I went in—I just went in there and ordered me a sandwich and then they came in there with a gun and just held the man up, that's all. I didn't do nothing.

(September 9, 1982 BE–16:12–25, 17:1–25, 18:1–2).

The trial judge then reinstated the not guilty plea on each count and told the petitioner that they were proceeding to trial. (18:8–9). The jury was once again brought back into the courtroom. Within three minutes defense counsel once again requested that the petitioner be allowed to approach the court in order to give the court further factual information regarding his role in the robbery. The jury was again removed and the following exchange took place:

The Court: All right. Now, I have reinstated the plea of not guilty. I don't want to have to go back through the formalities of getting it withdrawn. Do you want to proceed with the plea of guilty from the point we stopped at?

The Defendant: Yeah.

The Court: Then go ahead and give me a factual basis.

The Defendant: Yeah.

The Court: Tell me what you did in committing the robbery.

The Defendant: Okay. I went in to distract the man that was running the place.

The Court: Okay. Did you know that they were going to hold the place up?

The Defendant: Yeah.

The Court: And was this on or about March 30, 1982?

The Defendant: Yeah.

The Court: And was it at the Town & Country Market on about 25th and Farnum, in Omaha, Douglas County, Nebraska?

The Defendant: Yeah.

The Court: Was money taken from Mr. Loneman, who was running the Town & Country Market there, in charge of it that night?

The Defendant: Yeah.

The Court: And was that the money of the Town & Country Market?

The Defendant: Yeah.

(BE–19:6–25, 20:1–8). The exchange continued with the petitioner admitting that the money was taken with the intent to deprive the owner of its lawful right to that money, that the petitioner received part of that money after the robbery, and that the money was taken from the victim by threat of force, i.e., by pointing a gun at the victim. (BE–20:9–25, 21:1–8) In addition, the petitioner eventually admitted that the robbery and his role of distracting the clerk were planned ahead of time. (BE–21:9–12).

The court then went through a similar colloquy regarding Count II of the information, use of a deadly weapon to commit a felony. It was established that one of petitioner's co-defendants, Leroy Brooks, produced a gun during the course of the robbery and used that weapon to commit the robbery in which the petitioner participated. (BE–25:4–25, 26:1–25, 27:1–9).

■ Based on the admissions of the petitioner, the court made findings that there was a sufficient factual basis upon which to accept the guilty pleas of the petitioner. The state court records submitted herein fully support the conclusion reached by the trial court. While it is true that the petitioner was originally hesitant to admit his role in the robbery, that hesitation does not overcome his eventual admissions of guilt to both of the crimes charged. The mere fact that the petitioner was reluctant to admit his guilt does not itself invalidate his pleas. The Supreme Court noted in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970):

An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

400 U.S. at 37, 91 S.Ct. at 167. Petitioner is correct that there must be a sufficient factual basis upon which to base the plea before the court may accept that plea. *Alford*, 400 U.S. at 37–38, 91 S.Ct. at 167. That rule does not, however, prohibit a court from accepting a plea simply because the defendant is hesitant or reluctant in his admission of guilt. *Id.* The trial court in this case was sensitive to the reluctance of the petitioner, as demonstrated by the

judge's initial refusal to accept the pleas and the reinstatement of the not guilty pleas. It was the petitioner who for a second time stopped court proceedings and requested a chance to give the court further information regarding his role in the robbery. The record reveals a sufficient factual basis from the petitioner's own admissions and from the recitations of evidence which the state set forth at the plea-taking hearing.

■ To the extent that I can infer an argument from the petitioner that the factual basis was insufficient because there was no specific charge of "aiding and abetting" included in the information, a claim which has not been explicitly raised by the petitioner, such a claim must fail as well. It has long been the law in Nebraska that an information charging an aider and abettor of a crime need not include any additional facts than those necessary to charge the principal of the crime. *Smith v. State*, 153 Neb. 308, 44 N.W.2d 497 (1950); *Moore v. State*, 148 Neb. 747, 29 N.W.2d 366 (1947); *Puckett v. State*, 144 Neb. 876, 15 N.W.2d 63 (1944); *Scharman v. State*, 115 Neb. 109, 211 N.W. 613 (1926). In construing Nebraska's aiding and abetting statute, *Neb.Rev.Stat.* § 28–201, the Nebraska Supreme Court has held:

> * * * any person who is present at the place of a crime, aiding and assisting in the commission thereof is in fact a principal and may be prosecuted as such. * * *
>
> The same rule as to the information, conduct of the case, and punishment, applicable to the principal in fact now governs his aider and abettor or procurer, and no additional facts need be alleged in an information against the latter than are required against his principal.

*Moore v. State*, 148 Neb. at 755, 29 N.W.2d 366, *quoting, Puckett v. State*, 144 Neb. at 878, 15 N.W.2d 63.

Thus, the court in this case needed only to be assured of petitioner's involvement in the "Town & Country" robbery rather than finding that the facts showed petitioner to have been a principal actor in the crime. As stated above, the record reveals that such a sufficient factual basis existed, and the trial court properly accepted the peti-

tioner's plea. For the reasons stated above I conclude this claim must fail.

## RIGHT TO COUNSEL OF CHOICE

In his third claim the petitioner asserts that he was denied due process of law and his sixth amendment right to counsel when the trial court refused to allow a continuance in order for his "new" attorney to familiarize himself with the case and ultimately represent him at trial.

■ Addressing such a substitution of counsel claim the Eighth Circuit has stated:

> We begin our analysis by noting that "the right to counsel is a shield, not a sword. A defendant has no right to manipulate his right for purpose of delaying and disrupting the trial." *United States v. White*, 529 F.2d 1390, 1393 (8th Cir. 1976). Additionally, it is well settled that a "criminal defendant does not have the absolute right to counsel of his choosing." *Carey v. State of Minnesota*, 767 F.2d 440, 441 (8th Cir.1985), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 536, 88 L.Ed.2d 467 (1985). Instead, "[s]ubstitution of counsel is a matter committed to the sound discretion of the trial court." *Nerison v. Solem*, 715 F.2d 415, 418 (8th Cir.1983), *cert. denied*, 464 U.S. 1072, 104 S.Ct. 983, 79 L.Ed.2d 220 (1984) and 465 U.S. 1026, 104 S.Ct. 1283, 79 L.Ed.2d 686 (1984).

*Meyer v. Sargent*, 854 F.2d 1110 (8th Cir. 1988). Further, it has long been the rule in this circuit that in order to warrant substitution of counsel, the defendant must show "justifiable dissatisfaction with his appointed counsel." *Nerison, supra*, at 418, citing *United States v. Hart*, 557 F.2d 162, 163 (8th Cir.1977), *cert. denied*, 434 U.S. 906, 98 S.Ct. 305, 54 L.Ed.2d 193 (1977). "The right to effective assistance of counsel may not be improperly manipulated by an eleventh hour request to obstruct the orderly administration of justice." *Nerison*, 715 F.2d at 418.

Here the petitioner alleges that the trial judge refused to allow him to obtain counsel of his own choosing, at petitioner's own expense, and grant a continuance in order for this new attorney to familiarize himself with the case. I note first that the evidence offered by the petitioner in support

of his claim, pp. 52–54 of petitioner's brief, appears to be from a bill of exceptions relating to the petitioner's trial for the "Dividend Gas" robbery.[2] In any event, this court has no bill of exceptions which contains the colloquy quoted by petitioner in his brief relating to this claim.

■ It appears, however, that petitioner did seek to substitute counsel the day before his trial on the "Town & Country" robbery as well. Petitioner filed with the district court his own pleading entitled "Ask for relief from ineffective counsel" wherein the petitioner states that as of the date of the motion he had hired an attorney to represent him in the proceeding Doc. 112, No. 278, i.e., the "Town & Country" robbery. Although that motion was dated September 8, 1982, the file stamp date was September 10, 1982. This court is unable to find an order within the district court transcript denying petitioner's requested relief, or a portion of the bill of exceptions which related to that request; however, the district court referred to the pleading at issue in its order denying petitioner's motion for post-conviction relief. The district court noted in that order that petitioner referred to having hired attorney Robert Broom, and noted further that Mr. Broom never made an appearance in the case.

In his pro se pleading requesting new counsel petitioner argued that he required the assistance of new counsel because his trial was to begin the next day and his "court appointed counsel has yet to talk to me about the facts pertaining to my case." This assertion is contradicted, however, by petitioner's statements given to the court at plea-taking hearing wherein he stated that his court appointed attorney explained the charges to him, and discussed with him his available defenses and their theory of the case. He also stated that he was satisfied with the job counsel had done for him, that he felt that counsel was competent, and finally that he felt that he had had sufficient time to discuss the case with counsel. (September 9, 1982 BE–13:1–25, 14:1–6).

The Nebraska Supreme Court addressed this claim in its opinion on petitioner's appeal of his post-conviction action and noted that petitioner had nearly five months in which to obtain his own attorney and that petitioner had acknowledged that he had the necessary funds to do so since mid-July of 1982. *State v. Neal*, 231 Neb. at 419, 436 N.W.2d 514. Nonetheless, petitioner chose to wait until the day before his trial was to begin to seek a substitution of counsel, counsel who never entered an appearance nor apparently contacted the court regarding petitioner's case.

The petitioner has offered no evidence to this court to justify a finding that the trial court abused its discretion in denying his pleading which sought the right to proceed with new counsel. His recitation to the court at the time of the plea taking indicated that he was satisfied with the assistance of his court-appointed counsel. As noted above, I find nothing in the record to indicate that petitioner's appointed counsel was ineffective or that the petitioner was prejudiced by any acts or omissions of counsel. Relief should be denied on this claim as well.

## CRUEL AND UNUSUAL PUNISHMENT

Petitioner alleges that the sentences imposed upon him constitute cruel and unusual punishment in violation of the Eighth Amendment, in that he was ordered to serve all of his sentences consecutively. As noted above, petitioner's two sentences, ordered to be served consecutively, for the "Town & Country robbery," and the two other robbery sentences for the "Dividend Gas" and "Empire Cleaners" convictions were all to be served consecutively. Thus, according to Nebraska statutes, *Neb.Rev. Stat.* § 83–1, 110(2), the petitioner would be eligible for parole at least by the time he has served 29 years (less any reductions in accordance with Nebraska statutes) and has a total maximum sentence of 85 years for the three robberies.

Nebraska statutes classify the crime of robbery as a Class II felony, *Neb.Rev.Stat.*

2. The district court docket and page number quoted in the brief is "11, Number 291." The district court docket and page number of the "Dividend Gas" case is Doc. 112, No. 291 as it is set forth in the district court's order denying petitioner's motion for post-conviction relief in the "Town & Country" robbery.

§ 28–324(2), which is punishable by a minimum sentence of one year and a maximum sentence of fifty years, *Neb.Rev.Stat.* § 28–105. The crime of using a deadly weapon to commit a felony, *Neb.Rev.Stat.* § 28–1205, is a Class III felony, punishable by a minimum term of one year imprisonment and a maximum term of twenty-five years imprisonment, or twenty-five thousand dollars, or both, *Neb.Rev.Stat.* § 28–105. In addition, that crime is treated as a separate and distinct offense from that of the underlying felony and the sentences imposed for the felony and the use of a deadly weapon convictions *must* be imposed as consecutive sentences, *Neb.Rev. Stat.* § 28–1205(3).[3]

Recently the Eighth Circuit reiterated the test to be applied to Eighth Amendment challenges to the length of a petitioner's sentence.

In *Solem v. Helm,* 463 U.S. 277, 292, 103 S.Ct. 3001, 3010, 77 L.Ed.2d 637 (1983), the Supreme Court stated that "a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including, (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."

*Layton v. Solem,* 918 F.2d 739, 742 (8th Cir.1990).

Petitioner relies principally upon *Solem v. Helm, supra,* to support his argument that his sentence constitutes cruel and unusual punishment. In *Solem* the Supreme Court held that a life sentence imposed upon a South Dakota repeat offender was violative of the Eighth Amendment, where there was no record of violent crime and no possibility of parole. The petitioner's life sentence was handed down upon his conviction for uttering a no-ac-

count check for $100.00, a felony which was preceded by six prior nonviolent felony convictions. Just three years earlier, however, the Court held that a life sentence, upon conviction for obtaining $120.75 by false pretenses, a felony, did not violate the Eighth Amendment in *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). In *Rummel* the defendant had three prior felony convictions, none of them involving violence, but under the Texas Recidivist Statute the defendant received a mandatory sentence of life imprisonment upon his third felony conviction. In *Rummel* the petitioner was eligible for parole, and in fact was released only eight months after the Supreme Court's decision in his case. *Helm, supra,* 463 U.S. at 297 n. 25, 103 S.Ct. at 3013 n. 25.

In assessing the first factor from *Solem* I note that robbery and the separate crime of "use of a deadly weapon" are arguably viewed as "grave" offenses by the Nebraska legislature. A maximum sentence of fifty years is assuredly a severe sentence, although there is certainly room for discretion since the minimum sentence is one year. The Class II classification of the crime of robbery is shared by such crimes as kidnapping, § 28–313, first degree sexual assault, § 28–319, and arson, 28–502, and a crime such as manslaughter has the lesser classification of a Class III felony. Clearly, then, robbery is viewed by state lawmakers as a serious offense. Additionally, the crime of "use of a deadly weapon to commit a felony," has likewise been viewed as a grave offense, given that it has been classified, as with manslaughter, as a Class III felony, and the legislature has made any sentence therefor a mandatory consecutive sentence to that of the underlying felony.

The petitioner argues that in this particular case his sentences were particularly excessive given that he was convicted merely on the basis of "aiding and abetting" the "Town & Country" robbery, and

---

**3.** In his brief to this court the petitioner asserts that he was sentenced as well under the habitual criminal statute, *Neb.Rev.Stat.* § 29–2221. There is nothing in the state court records submitted to this court which indicates that the prosecution sought such a conviction or that the trial court held the mandatory habitual criminal

hearing, § 29–2221(2), or otherwise took the habitual criminal statute into consideration when sentencing the petitioner for the "Town & Country" robbery. I therefore shall not consider petitioner's assertion that he was sentenced as an habitual criminal in assessing the merits of this Eighth Amendment claim.

never touched the weapon used nor caused any harm to the robbery victim. While the record does support petitioner's argument that he merely entered the store to "distract" the clerk prior to his co-defendants entering with a gun to rob the clerk, this fact does not alter the legislative mandate that "a person who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he were the principal offender." *Neb.Rev.Stat.* § 28–206. The petitioner admitted to the trial court at the plea-taking hearing that he had entered the "Town & Country" store to distract the clerk, and also stated that he understood, after an explicit explanation by the trial judge, what "aiding and abetting" meant in relation to both offenses. (10:21–25, 11:1–16, 19:14–20).

Petitioner asserts that his sentences were disproportionately more severe than the sentences imposed upon his co-defendants, Walter Bray and Leroy Brooks. Petitioner has not, however, submitted any evidence in the form of state court records, other than assertions in his brief, of the sentences imposed upon his co-defendants for the "Town & Country" robbery or for the "Empire Cleaners" or "Dividend Gas" robberies. The only "evidence" of the sentence of one of the petitioner's co-defendants is from the testimony of Walter Bray at the error coram nobis hearing where Bray stated that he had received a sentence of "three to nine for the robbery" and "one to three" for the use of a deadly weapon conviction, to be served consecutively. (August 23, 1983 BE–29:16–17).

Comparing petitioner's sentence for the "Town & Country" robbery to that of Bray's for the same incident, it would appear, based on their respective roles in the crime, that petitioner was dealt with more harshly than Bray. However, as noted by the trial court at sentencing, petitioner had a five-year history of criminal convictions which were becoming progressively more dangerous, and the "Town & Country" robbery was the third in a string of robberies all of which occurred within the month of March of 1982, and all of which resulted in conviction. The petitioner has offered no evidence of his co-defendants' criminal history such that it might be compared to his own. Such a history might surely be a relevant factor in assessing why the petitioner received a more severe sentence than that of his co-defendant Bray.

In addition to arguing that his sentence was proportionately more harsh than his co-defendants', petitioner also cites cases from Nebraska where persons convicted of second-degree murder did not receive sentences as harsh as that given the petitioner. Petitioner cites cases from Nebraska courts in which defendants were given terms of from twelve to twenty years for convictions on the charge second-degree murder, see, *State v. Paulson,* 211 Neb. 711, 320 N.W.2d 115 (1982) (15 years); *State v. Stranghuener,* 212 Neb. 203, 322 N.W.2d 407 (1982) (20 years); *Marteney v. State,* 210 Neb. 172, 313 N.W.2d 449 (1980) (12 years); and *State v. Kelly,* 207 Neb. 295, 298 N.W.2d 370 (1980) (15 years). I note that all of these defendants received these sentences as part of plea bargain in which they entered pleas to a reduced charge of second-degree murder.

Petitioner's review of these cases ignores an important distinction. Each of these defendants were charged with and convicted of *one* count of second-degree murder, while in this case the "twenty-nine to eighty-five year" term imposed upon this petitioner was for convictions on three counts of robbery and one count of use of a weapon to commit a felony. While petitioner's argument that second-degree murder is a more heinous crime than robbery is a point well taken, it must be remembered that petitioner is challenging a cumulative sentence for four felony convictions.

The petitioner has offered no evidence of sentences imposed for the same crime in other jurisdictions.

This court is not insensitive to the severe penalty exacted upon this petitioner; however, petitioner could have been sentenced to the maximum term of fifty years for each of the three robbery convictions and a maximum term of twenty-five years and a twenty-five thousand dollar fine for the use of a deadly weapon conviction, and, if ordered to be served consecutively, could have resulted in a sentence of one hundred seventy-five years imprisonment. Despite

petitioner's reliance upon *Solem v. Helm, supra,* that case is distinguishable. There is no indication that this petitioner will not be afforded his statutory right to parole eligibility or the ability to attain "good time" credits against his sentences. While I recognize that petitioner's sentence is indeed severe, I cannot conclude that the petitioner has shown that the trial court violated the Eighth Amendment in imposing sentence in this case.

IT THEREFORE HEREBY IS RECOMMENDED, pursuant to 28 U.S.C. § 636(b)(1)(B), that the petition for writ of habeas corpus be denied.

The petitioner is hereby notified that unless objection is made within ten days after being served with a copy of this recommendation, he may be held to have waived any right he may have to appeal the court's order adopting this recommendation.